CONNECTICUT ALCOHOL AND DRUG ABUSE COMMISSION ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(15133)

PETERS, C. J., AND BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued February 8—decision released May 9, 1995

*Kenneth H. Kennedy, Jr.*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellants (plaintiffs).

*Colleen M. Murphy*, commission counsel, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

BORDEN, J. The dispositive issue in this appeal is whether, under the circumstances of this case, an investigative file of a sexual harassment complaint by one employee of a state agency against a coworker constitutes a "personnel or . . . similar" file within the meaning of General Statutes § 1-19 (b) (2)[1] of the Free-

[1] General Statutes § 1-19 provides in relevant part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the secretary of the state, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings.

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) *per-*

dom of Information Act (act). The plaintiffs, the Connecticut alcohol and drug abuse commission (CADAC) and Patricia C. Lempicki, CADAC's personnel administrator,[2] appeal[3] from the judgment of the trial court dismissing its administrative appeal from an order by the defendant freedom of information commission (FOIC). The FOIC had ordered CADAC to disclose a redacted version of an internal investigation file regarding a sexual harassment complaint. Because we conclude that this investigation file is similar to a personnel file, we reverse the trial court's judgment and remand the case to that court with direction to remand the case to the FOIC for consideration of whether disclosure of the file would constitute an invasion of personal privacy of either of the individuals involved.

The following procedural background is undisputed. Charlene McBroom and Noemi Reyes, CADAC employees working as police officers at Blue Hills Hospital (hospital) in Hartford, had made allegations of sexual harassment against a fellow officer, Kelvin Moore.[4] Following an internal investigation of these charges conducted by CADAC's affirmative action officer, Moore was dismissed from his position. Thereafter, Moore filed a grievance concerning his dismissal with the state board of labor relations. Moore also filed a request with the personnel director of the hospital, who referred the

sonnel or medical files and *similar files* the disclosure of which would constitute an invasion of personal privacy . . . ." (Emphasis added.)

Unless otherwise noted, we use the current statutes throughout this opinion because there are no relevant substantive differences between these statutes and those in effect during the administrative proceedings and trial.

[2] Although both CADAC and its personnel administrator were plaintiffs in the trial court and are appellants in this appeal, we refer herein to the plaintiffs as CADAC.

[3] CADAC appealed from the dismissal of its administrative appeal to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[4] Moore was also named as a defendant in the trial court, but did not file a brief or otherwise participate in this appeal.

matter to CADAC's personnel administrator to examine and to copy: (1) the personnel files of McBroom and Reyes; and (2) "[a]ny and all information regarding previous complaints of sexual harassment filed by officers McBroom and Reyes, the investigation regarding these complaints and the findings by CADAC." It is this second portion of Moore's request that is at issue in this case. CADAC denied Moore's request pursuant to General Statutes § 1-20a (c),[5] because McBroom and Reyes had filed timely objections to the release of the information.

---

[5] General Statutes § 1-20a provides in relevant part: "PUBLIC EMPLOYMENT CONTRACTS AS PUBLIC RECORD. OBJECTION TO DISCLOSURE OF PERSONNEL OR MEDICAL FILES. . . .

"(b) Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned, provided such notice shall not be required to be in writing where impractical due to the large number of employees concerned and (2) the collective bargaining representative, if any, of each employee concerned. Nothing herein shall require an agency to withhold from disclosure the contents of personnel or medical files and similar files when it does not reasonably believe that such disclosure would legally constitute an invasion of personal privacy.

"(c) A public agency which has provided notice under subsection (b) of this section shall disclose the records requested unless it receives a written objection from the employee concerned or the employee's collective bargaining representative, if any, within seven business days from the receipt by the employee or such collective bargaining representative of the notice or, if there is no evidence of receipt of written notice, not later than nine business days from the date the notice is actually mailed, sent, posted or otherwise given. Each objection filed under this subsection shall be on a form prescribed by the public agency, which shall consist of a statement to be signed by the employee or the employee's collective bargaining representative, under the penalties of false statement, that to the best of his knowledge, information and belief there is good ground to support it and that the objection is not interposed for delay. Upon the filing of an objection as provided in this subsection, the agency shall not disclose the requested records unless ordered to do so by the Freedom of Information Commission pursuant to section 1-21i. Failure to comply with a request to inspect or copy records under this section shall constitute a denial for the purposes of section 1-21i. Notwithstanding any provision of this subsection or sub-

Moore appealed to the FOIC, alleging that CADAC's refusal to disclose the requested materials violated the act. A hearing was held before commissioner Joan M. Fitch, who had been designated as the hearing officer for the case. McBroom and Reyes were granted party status pursuant to General Statutes § 1-21i (b) (1).[6]

section (b) of section 1-21i to the contrary, if an employee's collective bargaining representative files a written objection under this subsection, the employee may subsequently approve the disclosure of the records requested by submitting a written notice to the public agency."

[6] General Statutes § 1-21i provides in relevant part: "DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . .

"(b) (1) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, 1-20a and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unnoticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the date of the denial from which such appeal is taken. Upon receipt of such notice, the commission shall serve upon all parties, by certified or registered mail, a copy of such notice together with any other notice or order of such commission. In the case of the denial of a request to inspect or copy records contained in a public employee's personnel or medical file or similar file under subsection (c) of section 1-20a, the commission shall include with its notice or order an order requiring the public agency to notify any employee whose records are the subject of an appeal, and the employee's collective bargaining representative, if any, of the commission's proceedings and, if any such employee or collective bargaining representative has filed an objection under said subsection (c), the agency shall provide the required notice to such employee and collective bargaining representative by certified mail, return receipt requested or by hand delivery with a signed receipt. *A public employee whose personnel or medical file or similar file is the subject of an appeal under this subsection may intervene as a party in the proceedings on the matter before the commission.* Said commission shall, after due notice to the parties, hear and decide the appeal within one year after the filing of the notice of appeal, by confirming the action of the agency or ordering the agency to comply forthwith with such relief as the commission, in its sound discre-

CADAC informed the FOIC that, in addition to the personnel files of McBroom and Reyes, it had two files concerning an investigation of a sexual harassment complaint, other than the complaint against Moore, that had been brought previously by McBroom or Reyes against a coworker[7] other than Moore (investigation file).[8] CADAC claimed that: (1) the personnel files of McBroom and Reyes were exempt from disclosure in their entirety pursuant to § 1-19 (b) (2); see footnote 1; (2) the investigation file constituted a "similar file" that was exempt from disclosure pursuant to § 1-19 (b) (2); see footnote 1; and (3) the investigation file was exempt from disclosure pursuant to General Statutes (Rev. to

tion, believes appropriate to rectify the denial of any right conferred by said sections. The commission shall adopt regulations in accordance with chapter 54, establishing criteria for those appeals which shall be privileged in their assignment for hearing. Any such appeal shall be heard within thirty days after receipt of a notice of appeal and decided within sixty days after the hearing. If a notice of appeal concerns an announced agency decision to meet in executive session or an ongoing agency practice of meeting in executive sessions, for a stated purpose, the commission or a member or members of the commission designated by its chairperson shall serve notice upon the parties in accordance with this section and hold a preliminary hearing on the appeal within seventy-two hours after receipt of the notice, provided such notice shall be given to the parties at least forty-eight hours prior to such hearing. If after the preliminary hearing the commission finds probable cause to believe that the agency decision or practice is in violation of sections 1-18a and 1-21, the agency shall not meet in executive session for such purpose until the commission decides the appeal. If probable cause is found by the commission, it shall conduct a final hearing on the appeal and render its decision within five days of the completion of the preliminary hearing. . . ." (Emphasis added.)

[7] CADAC did not disclose which officer, McBroom or Reyes, had filed this earlier claim, and it did not reveal the name of the coworker who had been accused of sexual harassment.

[8] The materials concerning the sexual harassment complaint were physically contained in two physical files. Because both files pertained to the same single allegation and investigation, and were treated as a single unit by the FOIC, we analyze these files as if they were one and refer to them in the singular. In using the term "investigation file" herein, we refer to those portions of the investigation report and the related correspondence that the FOIC ordered to be disclosed.

1993) § 46a-83 (b), now § 46a-83 (g), which protects against disclosure of investigatory materials of the state commission on human rights and opportunities (CHRO).

At the conclusion of the hearing, CADAC submitted the documents at issue to the hearing officer for an in camera inspection. Subsequently, the hearing officer filed a proposed decision that the FOIC adopted as a final decision. The FOIC determined that portions of the personnel files were exempt from disclosure pursuant to § 1-19 (b) (2) because disclosure of those portions would constitute invasions of the personal privacy of McBroom and Reyes. The FOIC ordered CADAC to disclose only those portions of the files not exempt from disclosure, and permitted CADAC to redact portions of the records containing information not sought by Moore. CADAC has not challenged this part of the FOIC order.

The FOIC also determined that the investigation file did not constitute a "similar file" within the meaning of § 1-19 (b) (2), and was not, therefore, subject to exemption from disclosure pursuant to that section. Furthermore, the FOIC concluded that § 46a-83 (b) did not apply to the investigation file, because that section "applies to the confidentiality of information concerning discriminatory practice complaints filed with CHRO and does not prohibit the respondent CADAC from disclosing records pertaining to its internal investigations of sexual harassment complaints." See footnote 9. The FOIC concluded, therefore, that the investigation file was subject to disclosure pursuant to the disclosure provisions of the act.

The FOIC then reviewed each document in the investigation file and, in certain instances, "decline[d] to order disclosure of the information" contained therein,

purportedly as an act of discretion pursuant to General Statutes § 1-21i (b) (2),[9] because such information pertained to third parties, would subject them to embarrassment or ridicule, and redaction would render the documents incomprehensible. The FOIC ordered disclosure of selected documents from the investigation file, namely, the investigative report and certain correspondence pertaining to the investigative report. See footnote 8. The FOIC stated, however, that CADAC may redact "those portions of the records that reveal the names of third parties and/or witnesses and any personally identifiable information concerning them."

CADAC filed this administrative appeal in the trial court, challenging the FOIC's order to release the investigation file. The trial court, *O'Neill, J.*, stayed enforcement of the FOIC order pending the resolution of the administrative appeal.

In the trial court, CADAC renewed its claims that: (1) the investigation file constitutes a "similar file" to a personnel file, the disclosure of which would consti-

---

[9] General Statutes § 1-21i provides in relevant part: "DENIAL OF ACCESS TO PUBLIC RECORDS OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . .

"(b) (2) In any appeal to the Freedom of Information Commission under subdivision (1) of this subsection or subsection (c) of this section, the commission may confirm the action of the agency or order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, 1-20a, and 1-21 to 1-21k, inclusive. The commission may declare null and void any action taken at any meeting which a person was denied the right to attend and may require the production or copying of any public record. In addition, upon the finding that a denial of any right created by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, was without reasonable grounds and after the custodian or other official directly responsible for the denial has been given an opportunity to be heard at a hearing conducted in accordance with sections 4-176e to 4-184, inclusive, the commission may, in its discretion, impose against the custodian or other official a civil penalty of not less than twenty dollars nor more than one thousand dollars. . . ."

tute an invasion of personal privacy pursuant to § 1-19 (b) (2); and (2) release of the investigation file would violate § 46a-83 (b), pertaining to CHRO investigations. Additionally, CADAC claimed for the first time that release of the file would "affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state," in violation of General Statutes (Rev. to 1993) § 1-19b (b) (1),[10] because it would affect the discovery rights involved in Moore's pending grievance before the state board of labor relations.

The trial court, *Maloney, J.*, determined that: (1) the FOIC had properly concluded that the investigation file does not constitute a similar file; (2) the CHRO provisions of the General Statutes were inapposite;[11] and

---

[10] General Statutes (Rev. to 1993) § 1-19b provides in relevant part: "AGENCY ADMINISTRATION. DISCLOSURE OF PERSONNEL, BIRTH AND TAX RECORDS. JUDICIAL RECORDS AND PROCEEDINGS. . . .

"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be deemed in any manner to (1) affect the status of judicial records as they existed prior to October 1, 1975, nor to affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state or (2) require disclosure of any record of a personnel search committee which, because of name or other identifying information, would reveal the identity of an executive level employment candidate without the consent of such candidate."

[11] CADAC claimed that even though the investigation file was compiled by it through an internal investigation and was not the product of a CHRO investigation, the file was nonetheless exempt from disclosure. CADAC argued that because General Statutes § 46a-68 requires that state agencies adopt and implement affirmative action plans that must be approved by the CHRO, the results of an internal investigation that had been conducted in accordance with that approved plan are subject to the same confidentiality requirements granted by § 46a-83 to the results of investigations conducted by the CHRO itself.

CADAC also claimed exemption from disclosure because some or all of the documents at issue were obtained by the CHRO during the course of its independent investigation of the same charges. To allow disclosure of these documents, CADAC argued, would essentially nullify the confidentiality requirements of § 46a-83.

CADAC does not reiterate these claims in this appeal and we therefore need not address their merits.

(3) CADAC had failed to identify what rights it might have under the law of discovery or how disclosure of the file as ordered by the FOIC would affect those rights, and therefore, CADAC had not met its burden of proving an exemption under § 1-19b (b) (1). Accordingly, the court dismissed CADAC's administrative appeal. This appeal followed.

In this appeal, CADAC's principal claim is that the investigation file constitutes a "similar file" and is exempt from disclosure pursuant to § 1-19 (b) (2).[12] We

[12] CADAC also makes three claims that require little discussion. CADAC claims that: (1) we are not bound to follow the FOIC's interpretation of the statute; (2) the FOIC was prohibited from ordering the disclosure of the documents because, with respect to Moore's pending grievance, such disclosure would affect the rights of the parties under the discovery laws of this state in violation of § 1-19b (b); and (3) the FOIC had no discretion to withhold portions of the investigation file in the absence of a statutory exemption from disclosure.

CADAC's first argument, that we are not bound by the FOIC's interpretation of the statute, is essentially a question of our scope of review, which we address in the context of resolving CADAC's substantive claim.

We need not determine the merits of CADAC's claim that § 1-19b (b) prohibits the disclosure of records if such disclosure would affect the discovery rights of litigants. We agree with the trial court that because CADAC offered no evidence at the FOIC hearing as to the discovery rights of the parties in the grievance action brought by Moore, CADAC failed to demonstrate that release of the documents would affect the discovery rights of litigants in the grievance action.

"[T]he general rule under the Freedom of Information Act is disclosure with the exceptions to this rule being narrowly construed. The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 167, 635 A.2d 783 (1993). Assuming, without deciding, that, during the pendency of litigation, § 1-19b (b) exempts from disclosure information beyond that which is available through discovery, CADAC failed to meet its burden of establishing the applicability of the exemption because it failed to present *any* evidence to support its claim. Even if § 1-19b (b) provides such an exemption, therefore, CADAC could not have been found to have established an entitlement to it. It would be impossible for the FOIC, the trial court, or this court to determine whether disclosure of the investigation file would

agree that the investigation file constitutes a file similar to a personnel file. Because the FOIC did not, however, reach the question of whether disclosure of the investigation file would also constitute an invasion of personal privacy, further proceedings are required.

"When [a] claim for exemption involves § 1-19 (b) (2), the plaintiffs must meet a twofold burden of proof . . . . First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or 'similar' files. Second, they must show that disclosure of the records would constitute an invasion of personal privacy." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 168, 635 A.2d 783 (1993). Determination as to whether either prong has been satisfied is, in the first instance, a question of fact for the FOIC, to be determined pursuant to the appropriate legal standards. See id., 158; *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 204, 585 A.2d 96 (1991) (*Borden, J.*, concurring). We turn, therefore, to the question of whether the FOIC employed the proper legal standard in reaching its factual determination that the investigation file was not similar to a personnel file.

conflict with the discovery provided for in the pending grievance action where no evidence was offered as to what discovery is, in fact, available.

CADAC's third claim, that the FOIC did not have discretion to withhold portions of documents not subject to statutory exemption, consists of two elements: (1) the FOIC went beyond its statutory authority by not releasing all the documents not subject to statutory exemption; and (2) the FOIC, by shielding certain materials from disclosure, in effect determined that these materials would constitute an invasion of personal privacy. Because CADAC sought to shield all the documents from review, it cannot claim to be aggrieved by the FOIC's shielding of some of them. We therefore decline to review the first element of this claim. As to the second element of the claim, we leave the determination of whether disclosure of the investigation file would constitute an invasion of personal privacy to the FOIC on remand.

"Our resolution of this issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 774, 535 A.2d 1297 (1988). Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980)." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 164–65.

Nevertheless, we conclude that the FOIC improperly determined that the investigation file is not a "similar file." After reviewing the documents at issue, we conclude that, properly interpreting the term "similar file,"

the FOIC could only reasonably conclude that the documents at issue constitute a similar file.

Although we have delineated the applicable legal standard pertaining to the invasion of personal privacy prong of the § 1-19 (b) (2) exemption; id., 168; we have not had occasion to explain fully the scope of what constitutes a "similar" file within the meaning of the section. We are not entirely without guidance,[13] however, because we have determined that "similar" relates back to "personnel or medical files" and, therefore, the scope of the exception is limited. "We interpret the term 'similar files' to encompass only files similar in nature to personnel or medical files. This interpretation is consistent with our policy of narrowly construing exceptions to the [a]ct." (Internal quotation marks omitted.) *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 627–28, 609 A.2d 998 (1992); *Hartford* v. *Freedom of Information Commission*, 201 Conn. 421, 432 n.11, 518 A.2d 49 (1986).[14]

This case presents the question of when a file is "similar in nature" to personnel or medical files. We con-

---

[13] After examining the legislative history of the act, and also reviewing federal case law on the corresponding section of the federal Freedom of Information Act, we conclude that neither source provides useful insight into the meaning of "similar file" under our act. The legislative history is silent on the question of the meaning of "similar file." The federal case law is not useful because the federal courts have construed the term "similar file" differently from how we have done so. See *United States Dept. of State* v. *Washington Post Co.*, 456 U.S. 595, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982).

[14] *Hartford* v. *Freedom of Information Commission*, supra, 201 Conn. 421, concerned the release of police department internal investigation records arising out of a citizen complaint of misconduct. Although we concluded that such records were personnel or "similar" files, the basis of our conclusion was that the trial court had implicitly adopted this characterization and it was not contested on appeal. *Superintendent of Police* v. *Freedom of Information Commission*, supra, 222 Conn. 621, concerned the disclosure of municipal permits to carry pistols or revolvers. We determined that such permits were not "similar" to medical or personnel files.

clude that such a determination requires a functional review of the documents at issue. Just as a "medical" file of an individual has as one of its principal purposes the furnishing of information for making medical decisions regarding that individual, a "personnel" file has as one of its principal purposes the furnishing of information for making personnel decisions regarding the individual involved. If a document or file contains material, therefore, that under ordinary circumstances would be pertinent to traditional personnel decisions, it is "similar" to a personnel file. Thus, a file containing information that would, under ordinary circumstances, be used in deciding whether an individual should, for example, be promoted, demoted, given a raise, transferred, reassigned, dismissed or subject to other such traditional personnel actions, should be considered "similar" to a personnel file for the purposes of § 1-19 (b) (2).

In this case, the FOIC made a finding of fact, without revealing its analysis, that the investigation file was not a "similar file." The trial court, *Maloney, J.,* in dismissing CADAC's appeal, adopted the reasoning the FOIC espoused before it, which was that similar files "are those containing work related personnel matters such as performance evaluations and attendance records, as well as details of the employee's personal and family life. Separate reports of incidents occurring in the workplace and investigations thereof are not 'personnel files,' as the FOIC interprets that term in the statute." Although it agreed with CADAC that its broader interpretation of the statute was not unreasonable, the court determined that, because CADAC had the burden of proving the FOIC's interpretation unreasonable, the FOIC's position must prevail.

We believe that the trial court gave undue deference to the interpretation of the meaning of the statute by the FOIC. The FOIC's interpretation would limit the

term "similar files" to what are, for all intents and purposes, personnel files and would render the language "similar files" superfluous. "We presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Gateway* v. *DiNoia*, 232 Conn. 223, 237, 654 A.2d 342 (1995); *Frillici* v. *Westport*, 231 Conn. 418, 432, 650 A.2d 557 (1994).

We see no basis for a determination that the investigation file at issue in this case is not a "similar file" as we interpret that term. While reports of incidents occurring in the workplace are not "personnel files" per se, they may be similar to personnel files in that they may contain information that would ordinarily be considered in making personnel decisions regarding the individuals involved. Such reports would be functionally similar to information contained in the individual's personnel files. Section 1-19 (b) (2) requires a case-by-case analysis to determine whether a particular file is a "similar file."

Our in camera review of the investigation file at issue in this case leads us to conclude that it falls squarely within our definition of a "similar file." Not only did the investigation concern issues that had the potential for the dismissal of the accused employee, the investigation file also contains a good deal of information that would be directly relevant to traditional personnel decisions regarding both the accused employee and the coworker who had filed the complaint, and that would ordinarily be considered in making such decisions. Indeed, the file discloses that certain personnel actions were taken with regard to both employees involved. We conclude, therefore, that the investigation file is similar to a personnel file with regard to both parties at issue therein.

We turn next to the second prong of the § 1-19 (b) (2) exemption, namely, whether disclosure of the file would be an invasion of personal privacy as to either or both of these employees. In *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 175, we determined that "the invasion of personal privacy exception of § 1-19 (b) (2) precludes disclosure . . . only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." Thus, CADAC must show that disclosure of the file would constitute an invasion of personal privacy as we defined that phrase in *Perkins*. "Only by proving both prongs of this standard by a preponderance of the evidence can a party establish a right to invoke the statutory exemption so as to preclude disclosure. As we explained in *Perkins*, this standard implements the underlying principle that disclosure is the general rule under the [act] with exceptions to this rule being narrowly construed. The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption. *New Haven* v. *Freedom of Information Commission*, [supra, 205 Conn. 775]. *Perkins* v. *Freedom of Information Commission*, supra, 167." (Internal quotation marks omitted.) *Kureczka* v. *Freedom of Information Commission*, 228 Conn. 271, 277, 636 A.2d 777 (1994).

Because the FOIC determined that the investigation file was not subject to exemption pursuant to § 1-19 (b) (2), it made no determination as to whether disclosure of the documents would constitute an invasion of privacy of the complaining officer or the subject of the investigation. Such a determination is for the FOIC in the first instance. See *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 158; *Chairman* v. *Freedom of Information Commission*, supra, 217 Conn. 204 (*Borden, J.*, concurring). Furthermore, although the officer who had filed the sexual harassment complaint

was a party to the FOIC action, the person who was the subject of the investigation, for whom the investigation file is similar to a personnel file, was not given notice or an opportunity to intervene pursuant to § 1-21i (b) (1). We are compelled, therefore, to remand the matter to the FOIC, so that proper notice and an opportunity to intervene may be given to the subject of the investigation, and for a subsequent determination as to whether release of the investigation file would constitute an invasion of the privacy of the complaining officer or the subject of the investigation.

The judgment is reversed and the case is remanded to the trial court with direction to vacate the FOIC's order compelling disclosure of the investigation file, and to remand the case to the FOIC for proper notice to the individuals involved and for a determination of whether the disclosure of any information in the investigation file would constitute an invasion of personal privacy.

In this opinion the other justices concurred.