[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The State Department of Administrative Services ("DAS") has filed this appeal from the decision of the Freedom of Information Commission ("FOIC") ordering it to disclose to Stephen R. Corbeil the anonymous reports of handicap status of a group of job applicants.
On April 11, 1994, Mr. Corbeil complained to the FOIC that CT Page 1319-BB DAS had refused to grant him access to records containing social security numbers and the indications by eighty-six applicants for a librarian's position whether they were or were not handicapped.
The FOIC found that the social security numbers of the applicants for the particular job at issue were exempt from disclosure, and no appeal has been filed from that determination.
The FOIC found that as to the applicants who sat for Librarian I, Examination No. 9310670, DAS had data sheets that included reports on the handicapped status for each applicant. FOIC found that disclosure of the handicapped status as indicated on the applicant data sheets had not been proven by DAS to be exempt from disclosure, and it ordered DAS to provide Mr. Corbeil with access to "the requested handicapped status contained on the applicant data sheets."
DAS claims that this order is in excess of the statutory authority of the FOIC and that it is arbitrary, capricious, and an abuse of discretion. Specifically, DAS claims that the order violates those provisions of the Americans with Disabilities Act codified at 42 U.S.C. § 12112(c) and (d) and that it fails to give effect to exceptions to the duty to disclose set forth at Connecticut General Statutes §§ 1-19(a)-(b)(2) and -(b)(12). The DAS has also claimed in its brief that the federal Rehabilitation Act precludes the disclosure at issue.
Aggrievement
The status of DAS as an aggrieved party is not contested, and the court finds aggrievement, as a legally protected interest of the DAS has been adversely affected by the ruling of the FOIC.Rose v. Freedom of Information Commission, 221 Conn. 230 (1992).
Standard of Review
A court reviewing a determination by the FOIC must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Connecticut Alcohol Drug Abuse Commission v.FOIC, 233 Conn. 28, 39 (1995); Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397 (1992). "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically CT Page 1319-CC follow from such facts." Connecticut Alcohol Drug AbuseCommission v. FOIC, 233 Conn. 39, citing New Haven v. Freedom ofInformation Commission, 205 Conn. 767, 774 (1988).
While the Supreme Court has often noted, most recently in Connecticut Alcohol Drug Abuse Commission v. FOIC
("CADAC"), 233 Conn. 39, that it is its practice "to accord great deference to the construction given a statute by the agency charged with its enforcement," the federal statute on which DAS relies, the Americans with Disabilities Act and the Rehabilitation Act, are not statutes that the Freedom of Information Commission is charged with enforcing, as it is charged with enforcing the Connecticut Freedom of Information Act. Rather, the FOIC's duty as to the federal statute at issue is to give effect to its provisions. There is no indication in either federal statute that Congress meant the privacy provision in that act to be superseded by disclosure provisions of a state's sunshine law, and therefore any conflict between the state statute and a federal statute must be resolved in a manner that gives effect to the provisions of the federal law. Maryland v. Louisiana, 451 U.S. 725, 747 (1981);McCulloch v. State of Maryland, 17 U.S. (4 Wheat.) 316, 427 (1819).
A. ADA
The first issue in this appeal is whether the cited provisions of the federal Americans with Disabilities Act prohibits disclosure of the information sought by Mr. Corbeil, and whether the FOIC failed to give effect to such a prohibition, if it exists.
The record and briefs do not clearly describe the information that the DAS is resisting disclosing and that the FOIC has ordered to be disclosed. At oral argument, counsel for the two agencies agreed that the documents at issue are portions of applicant data forms in which each applicant was given the option of checking off "yes" or "no" to the following question:
Are you handicapped as defined below?
The definition supplied was as follows:
 Definition: HANDICAPPED PERSON — One having a verifiable physical or mental impairment which substantially limits one or more major life activities, or has a record of CT Page 1319-DD such impairments, or is regarded as having such an impairment. Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.
This inquiry as to handicapped status is prefaced on the applicant data form with an explanation that the information supplied "will be used solely in conjunction with affirmative action efforts and only in accordance with federal regulations implementing § 504 of the Rehabilitation Act." Applicants were not asked to specify the nature of their handicap or to set forth any medical information.
The data sheets on which the above check-off appears are anonymous. They do not bear the name of the applicant, and the DAS does not claim that the identity of the anonymous respondent is identifiable because of answers to any other questions on the form. In other words, the dispute is not over documents that identify an applicant by name or otherwise and also include that applicant's report that he or she is handicapped. Rather, the data sheets do not identify the applicants who filled them in, and the dispute is whether the DAS can be ordered to release anonymous data forms on which the applicant's identity is not set forth and from which it cannot be ascertained.
Release of the anonymous data forms would allow a person examining them to determine how many applicants, if any, reported that they were handicapped. Inspection of the set of approximately 86 forms would not enable a person viewing the forms to determine the identity of anyone who had indicated that he or she was handicapped.
To be quite clear as to the scope of the issue: this case does not present the issue of public access to the identities of persons who have reported that they are disabled or handicapped nor does it involve disclosure of identifiable medical records.
DAS takes the position that disclosure of the forms at issue is prohibited by two sections of the ADA: 42 U.S. § 12112(c) and 42 U.S. § 12112(d). The former section concerns the obligations of employers with regard to employees working in a foreign country. It is inapplicable to the issues in this appeal.
Subsection (d) provides as follows: CT Page 1319-EE
(d) Medical examinations and inquiries
 (1) In general
 The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.
 (2) Preemployment
 (A) Prohibited examination or inquiry
 Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
 (B) Acceptable inquiry
 A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.
 (3) Employment entrance examination
 A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if —
 (A) all entering employees are subject to such an examination regardless of disability;
 (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that —
 (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
CT Page 1319-FF
 (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
 (iii) government officials investigating compliance with this chapter shall be provided relevant information on request; and
 (C) the results of such examination are used only in accordance with this subchapter.
 (4) Examination and inquiry
 (A) Prohibited examinations and inquiries
 A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
 (B) Acceptable examinations and inquiries
 A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
 (C) Requirement
 Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).
The DAS claims, at paragraph 12 of its appeal, that "a preemployment inquiry of an applicant's disability is prohibited unless such information is treated as a confidential medical record." CT Page 1319-GG
The actual requirement of the statute that requires certain information to be maintained as a "confidential medical record" is set forth at 42 U.S.C. § 12112(d)(3)(B). It defines the information to be so maintained as: "information obtained regarding the medical condition or history of the applicant." A "yes" answer to the question "Are you handicapped as defined below?" does not provide information as to the "medical condition or history" of any identifiable applicant. No particular medical condition is revealed, no history is indicated, no information regarding the nature of a medical condition is elicited. A person inspecting the data forms for the 86 applicants for the librarian's position could not determine either the medical condition or medical history of any applicant, let alone "information . . . . regarding" such a medical condition or history. The cited section refers to medical information collected "after an offer of employment has been made to a job applicant," and the context is plainly actual information about an applicant's condition, not a report of handicapped status that identifies no particular medical condition or history.
The situation regulated by 42 U.S.C. § 12112(d)(3), which the DAS invokes, is thus not the phase of the hiring process at issue in the case before this court. The issue is whether the FOIC has erred in rejecting the DAS's claim that 42 U.S.C. § 12112(d), or any part thereof, prohibits disclosure of anonymous reports of handicapped status as to job applicants. That statute provides, at § 12112(d)(2)(A), with respect to preemployment inquiries, that "a closed entity shall not . . . make inquiries of a job applicant as to whether such applicant is an individual with a disability;" however, an employer may, pursuant to § 12112(d)(2)(B) "make preemployment inquiries into the ability of an applicant to perform job-related functions." The DAS apparently regards the inquiry as to "handicap," as defined in its form, as a preliminary inquiry into ability to perform the job and as a means of gathering affirmative action data as authorized by the Rehabilitation Act.
On its face, subsection (2) of § 12112(d) does not require the preemployment inquiries made of applicants as to ability to perform the job to be maintained as confidential medical records. The words of the statute make that requirement applicable only to the actual medical examination data and medical information and history collected after an offer of employment is made. DAS has cited no case in which § 12112(d) CT Page 1319-HH has been interpreted as prohibiting disclosure of anonymous reports of handicap by applicants prior to a job offer and medical examination.
Congress could, if it intended a broad prohibition against disclosure, have provided that all information concerning inquiries into disabilities be kept confidential. Instead, it limited this protection only to the actual information obtained in investigating the ability of an applicant to perform when a conditional job offer has been made.
The situation is therefore not, as the DAS asserts, similar to that presented in Kronhold v. New Haven Health Department,
#FIC 94-77, in which the FOIC gave effect to an explicit statutory prohibition against disclosure of the results of blood tests. Rather, the cited provisions of the ADA do not expressly prohibit disclosure of the data at issue.
The only provisions of the ADA cited by the DAS as compelling non-disclosure do not, by their terms, prohibit disclosure of anonymous pre-offer reports of handicapped status by job applicants. Though this court may favor more complete protection than the statute provides, the court is not free to add provisions to the ADA or to ignore the statutory scheme actually stated in the words of the statute. BarrettBuilders v. Miller, 215 Conn. 316, 328 (1990); Zapata v. Burns,207 Conn. 496, 503-504 (1988); Colli v. Real Estate Commission,169 Conn. 445, 452 (1975).
Examination of provisions of the ADA which the DAS claims the FOIC has failed to apply does not support the DAS claim of a prohibition against disclosure of non-identifiable data. This court does not conclude that the FOIC abused its discretion in construing the cited provisions of the ADA as it did. General Statutes § 1-19(b)(2) and (12).
General Statutes §§ 1-19(b)(2) and (12)
The other exemptions claimed by DAS and found to be inapplicable by the FOIC are General Statutes § 1-19(b)(2) and (12). Subsection (b)(2) exempts from disclosure "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." Subsection (b)(12) exempts "any information obtained by the use of illegal means." CT Page 1319-II
With regard to the claim that the data sheets are exempt pursuant to § 1-19(b)(2), the FOIC found that the documents sought "are precisely the types of information ordinarily recorded on records contained in personnel files." (Record 20, para. 10). The FOIC found, however, that disclosure of the set of anonymous data sheets had not been proven to constitute an invasion of any applicant's privacy. Since the parties agree that inspection of the sections of the data sheets on which applicants reported whether or not they had a handicap would not reveal that any particular, identifiable person had so reported, this court finds that the FOIC's conclusion is well supported by the evidence.
The last issue is the applicability of § 1-19(b)(12). The FOIC has pointed out that the DAS conceded in its memorandum in opposition to the proposed findings and decision of the FOIC (Record 18, page 7) that the self-reports of handicap or absence of handicap were legally obtained. DAS argued, however, that if the information legally obtained were to be illegally disclosed, the collection of the information would be "rendered illegal". This argument actually amounts to a claim that disclosure is illegal, a separate issue from the legality of elicitation of the reports.
The ADA, at 42 U.S.C. § 12112(d)(2)(A), prohibits an employer from "mak[ing] inquiries of a job applicant as to whether such applicant is an individual with a disability" except for the post-offer inquiries allowed pursuant to subsection (d)(3), set forth above. The request that applicants indicate their handicap status was therefore not authorized by the ADA. The DAS notes in its brief that other federal statutes authorized its collection of this information. While DAS has not cited any applicable statute, but only a Commerce Clearing House looseleaf service summary of one, the data collection form at issue is prefaced by a citation of the federal regulations effectuating Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84. Those regulations were enacted to effectuate those provisions of the Rehabilitation Act of 1973, 29 U.S. Code § 701 et seq., which are designed to eliminate discrimination on the basis of handicap in federally-funded programs or activities, 45 C.F.R. § 84.1 etseq.
With regard to pre-employment inquiries,45 C.F.R. § 84.14(b) provides that a recipient of federal funds CT Page 1319-JJ that is taking remedial actions to correct the effect of past discrimination may invite applicants for employment to indicate whether and to what extent they are handicapped, provided that:
 1) The recipient states clearly on any written questionnaire used for this purpose or makes clear orally if no written questionnaire is used that the information requested is intended for use solely in connection with its remedial actions obligations or its voluntary or affirmative action efforts; and
 2) the recipient states clearly that the information is being requested on a voluntary basis, that it will be kept confidential as provided in paragraph (d) of this section, that refusal to provide it will not subject the applicant to any adverse treatment, and that it will be used only in accordance with this part.
The cited subsection (d) provides as follows:
 d) Information obtained in accordance with this section as to the medical condition or history of the applicant shall be collected and maintained on separate forms that shall be accorded confidentiality as medical records except that
 1) Supervisors and managers may be informed regarding restrictions on the work or duties of handicapped persons and regarding necessary accommodations;
 2) First aid, and safety personnel may be informed, where appropriate, if the condition might require emergency treatment, and
 3) Government officials investigating compliance with the Act shall be provided relevant information upon request.
By its terms, the regulation on which the FOIC relies promises applicants that the prospective employer will keep as a confidential medical record only that information listed under subsection (d). That subsection limits the requirement of such confidential treatment to "information obtained . . . as to the medical condition or history of the applicant." The regulation does not, by its terms, require confidentiality as to reports of handicap status, where no medical information about the claimed handicap or its nature is furnished. DAS has cited no ruling in which it has been so interpreted. The FOIC apparently interpreted CT Page 1319-KK the Rehabilitation Act and its effectuating regulations as allowing collection of reports of handicap status but prohibiting disclosure only of information that revealed a medical condition or medical history. Given the wording of the regulation, which does not explicitly require confidentiality as to all information bearing on handicaps or as to anonymous reports that an unspecified handicap exists or that no handicap exists, this court does not find that the FOIC's reading of the federal requirement was an abuse of discretion, illegal, arbitrary, erroneous as a matter of law, or violative of principles of statutory construction.
Conclusion
For the foregoing reasons, the DAS has failed to establish that the anonymous documents at issue are exempt from disclosure, and the appeal is dismissed.
Beverly J. Hodson Judge of the Superior Court