[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Stephen Clarke, appeals the decision of the defendant, Connecticut Department of Administrative Services Employees Review Board ("board"), finding that the plaintiff did not have standing to appeal his demotion from the position of Deputy Warden II to Correctional Counselor. The Department of Correction is also named as a defendant in this appeal. For the reasons stated below, the court finds for the defendants.
The record reveals the following facts. From August 1991 to February 2, 1994, the plaintiff was employed in the position of Deputy Warden I, with an ultimate salary grade of MP62. (Appeal, ¶ 4; Return of Record ("ROR"), Items 13, 27.) Deputy Warden I is a position in the "classified service" as defined in General Statutes § 5-196(e). On February 2, 1994, the plaintiff accepted an appointment as a Correctional Warden, an unclassified CT Page 11465 position. See General Statutes §§ 5-198, 18-82.
After the November, 1994 gubernatorial election, but prior to the inauguration of the new governor, Correctional Deputy Commissioner Evelyn Bush distributed a memorandum dated December 2, 1994 to all unclassified managers, including the plaintiff. (ROR, Item 27, exhibit B.) This memorandum detailed "voluntary demotion" options for unclassified managers who might be asked to submit resignations by the new commissioner who would be appointed by the new governor. The memorandum states, "[i]f an unclassified manager is interested in taking a voluntary demotion to a classification he or she had previous permanent status in, the management must submit such a request . . . ASAP." The memorandum further states that "[r]eversions to these positions will be treated as voluntary demotions, and as such, salaries will be determined as if the incumbent was never promoted to the higher class." Attached to the memorandum was a document entitled "Return to Classified Service from Unclassified Service," which showed the plaintiff's previous classified position, listed as Correctional Deputy Warden, at salary group MP62. The document listed Webster and J.B. Gates as locations where Correctional Deputy Warden vacancies existed.
In December, 1994, the plaintiff applied to take the classified promotional examination for Deputy Warden II. (See ROR, Item 10.) By letter dated March 15, 1995, the plaintiff was notified that he had received a passing score on the promotional examination. (ROR, Item 11.) Deputy Warden II is a position in the "classified service" as defined in General Statutes §5-196(e), and the salary grade for the position is MP63. (ROR, Item 12.) By letter dated April 27, 1995, Deputy Commissioner of Operations Peter Matos informed the plaintiff that effective April 28, 1995, he was appointed to a Deputy Warden II position at the Osborn Correctional Institution. (ROR, Item 9.) In the letter, the plaintiff was referred to Laurie Kolakowski "for details on your new salary and any other personnel questions you may have." The plaintiff testified at the hearing that he spoke with Laurie Kolakowski and she told him there would be no working test period. (ROR, Item 6, hearing transcript, pp. 40-41.)
In a letter dated July 11, 1995, District Administrator Michael Bongazi informed the plaintiff that he was demoted, for disciplinary reasons, to Correctional Counselor, effective July 28, 1995. (ROR, Item 8.) The letter further states: "You have thirty (30) days to appeal this action with the Employee Review CT Page 11466 Board."
The plaintiff filed a timely grievance, which was denied at Level III on the basis that the plaintiff's demotion was not appealable because the demotion took place prior to the plaintiff's successful completion of the working test period for Deputy Warden II. (ROR, Item 1.) The plaintiff appealed this decision to the board. In a decision dated November 1, 1996, a panel of the board concluded that the plaintiff did not have a statutory right to appeal his demotion because he had not completed the working test period in the classification of Deputy Warden II. (ROR, Item 31.)
The plaintiff filed a timely appeal with this court under General Statutes §§ 5-202(1) and 4-183. The record and briefs have been filed, and oral argument took place on October 27, 1997.
The board made several findings that are pertinent to the issues on appeal. In its decision, the board found the following:
 The voluntary demotion offered to the grievant was specifically limited to classifications in which previous permanent status had been achieved. By accepting the position of Deputy Warden II, the grievant negated the viability and protection of a voluntary demotion.
(ROR, Item 31, p. 7.) The board also found that General Statutes § 5-236 did not apply to the plaintiff because the plaintiff "did not request return to a `class in which he has attained permanent status' as required by the statute." (ROR, Item 31, p. 7.) The board additionally found that while there were numerous errors on the part of correctional department employees regarding information given to the plaintiff regarding the working test period, the state was not estopped from arguing that the plaintiff was subject to the working test period because the board could not grant the plaintiff a right of appeal not otherwise available to him under statute or regulation. (ROR, Item 31, pp. 7-8.)
The plaintiff raises a number of issues on appeal. First, the plaintiff argues that the board erred in finding that the plaintiff, as a voluntary demotee, was subject to the working test period. The plaintiff also argues that the board erred in CT Page 11467 its interpretation and application of General Statutes §5-236(b) and erred in not applying Conn. Agency Regs. §5-230-1(b). Finally, the plaintiff claims that the state is estopped from arguing that the plaintiff was subject to a working test period because in May 1995, he was informed that there would be no working test period, and, in the July 11, 1995 letter regarding his demotion, he was informed that he had a right to appeal to the board.
It is well established that judicial review of an agency decision is limited. General Statutes § 4-183(j); ConnecticutAlcohol and Drug Abuse Commissioner v. Freedom of InformationCommission, 233 Conn. 28, 39 (1995).
 "[The court] must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; emphasis added; internal quotation marks omitted.) Connecticut Alcohol Drug Abuse Commission v. Freedom of Information Commission, supra, 39.
Burinskas v. Dept. of Social Services, 240 Conn. 141, 147 (1997).
The statute authorizing appeals to the board is General Statutes § 5-202(a), which provides, in pertinent part, "[a]ny employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in subsection (r) of section 5-196 may appeal to the Employees' Review Board if he or she . . . is demoted, suspended or dismissed . . . ." General Statutes (rev. to 1995) § 5-196(r)[1] defines "permanent appointment" as an "appointment to a position in the classified service following successful completion of the required working test."
The plaintiff contends that the board erred in finding that CT Page 11468 he had not achieved permanent status because his position as Deputy Warden II was a promotion and not a voluntary demotion. The record supports the board's finding. While the term "voluntary demotion" was used in a memorandum from the Deputy Commissioner, it clearly applied to those returning to classified service from unclassified service to the "positions [in] which they previously held permanent status." (ROR, Item 27, ex. B.) The plaintiff did not return to his classified position as Deputy Warden I, but took the exam and accepted a position as Deputy Warden II, a higher paying position which involves supervisory duties in larger correctional facilities. (ROR, Items 12, 28.) Accordingly, the plaintiff was subject to the working test requirement for permanent appointment. The required working test period for Deputy Warden II was six months.[2] (ROR, Decision, p. 7). Since he was placed in the position on April 28, 1995, the plaintiff had not achieved permanent status as a Deputy Warden II before the July 11, 1995 demotion. Accordingly, the plaintiff's first argument fails.
The plaintiff also claims that the board misapplied or misinterpreted General Statutes § 5-236(b) and therefore did not properly apply § 5-230-1 of the Regulations of Connecticut State Agencies. Subsection (b) of § 5-236 reads:
 Any employee in the classified service who has taken or takes a position in the unclassified service and who thereafter is ready to report for duty for a position in the classified service shall be placed on a reemployment list for the appropriate class in which he has attained permanent status for future reemployment when vacancies in the class occur. The order in which names shall be placed on the reemployment list for any class shall be by seniority in state service.
(Emphasis added). Section 5-230-1 reads:
 No additional working test period shall be required of any appointee from a reemployment list who previously served a satisfactory working test in the same or in a comparable class within the preceding three years."
(Emphasis added) CT Page 11469
The plaintiff reads this to say that a working test period was not required for his position as Deputy Warden II. As noted above, however, the record reveals that the plaintiff did not reach the position of Deputy Warden II prior to his unclassified service, and that the position in which he did receive permanent status, Deputy Warden I, is not in the same or comparable class. Further, the plaintiff did not reach this position from the reemployment list but took a promotional examination. As previously stated, the Deputy Warden II position is a higher paying position involving larger correctional facilities. Accordingly, the board did not err in its interpretation of §5-236(b).
Finally, the plaintiff argues that the state is estopped from arguing that the a working test period was required for the plaintiff as Deputy Warden II. The record reflects that a number of errors or misstatements, written and oral, were made by state employees to the plaintiff. Specifically, the plaintiff alleges that the December 1994 memorandum led the plaintiff to believe that there would be no working test period required if he took a position in classified service. A fair reading of that memorandum does not support the plaintiff's argument. As noted previously, the memorandum refers to returning to "those positions [in] which they previously held permanent status." The plaintiff also cites a conversation he had with Lori Kolakowski, an employee of Personnel Administration for the Department of Correction, on May 5, 1995, in which Kolakowski told him there would be no working test period. That conversation took place after he had been appointed to the Deputy Warden II position. Finally, the letter to the plaintiff notifying him of his demotion to correctional counselor included the following sentence:
 You have thirty (30) days to appeal this action with the Employee Review Board.
(ROR, Item 8).
The board found that these employees were without authority to "supersede existing statutes, DAS Regulations and/or Board Regulations." (ROR, item 31, p. 8.) The plaintiff does not argue otherwise, but contends that as a result of those misstatements and errors, he acted to his detriment so that the doctrine of estoppel should apply.
In Chotkowski v. State, 240 Conn. 246, 268-69 (1997), the CT Page 11470 Court reiterated the elements of estoppel in the context of an action against the state:
 "Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) Connecticut National Bank v. Voog, 233 Conn. 352, 366, 659 A.2d 172 (1995); see also D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217
(1987). "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Kimberly-Clark Corp. v. Dubno, 204 Conn. 137, 148, 527 A.2d 679
(1987). Finally, a claim for promissory estoppel will not lie against the state unless "the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." Id.
The court need not reach the tests peculiar to public agencies and the state as to estoppel. The plaintiff does not satisfy the initial two pronged test. There is simply nothing in the record to show that the plaintiff acted to his detriment as a result of the misstatements. While the errors by the state through the employees were unfortunate, the plaintiff did not provide the board with substantial evidence that he relied on that misinformation in accepting the Deputy Warden II position or that the employees' misstatements were intended to induce the plaintiff to accept the position. The court will not disturb the CT Page 11471 finding of the board that the state is not estopped by its employees actions.
Under the applicable law including that of the scope of review for administrative appeals and upon review of the record, the court cannot find that the board acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Board ofEducation v. Freedom of Information Commission, 208 Conn. 442,452 (1988). Accordingly, the appeal is dismissed.
DiPentima, J.