[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Anthony Troy Martin, is an attorney licensed to practice law in Connecticut. In this action, he seeks a ruling from this court thwarting the disclosure of a document to a hearing committee of the Statewide Grievance Committee. That hearing committee is engaged in a determination of a complaint against plaintiff.
Plaintiff had been arrested and prosecuted for an incident which CT Page 8088 allegedly occurred on April 1, 1998.
Because plaintiff was employed in the State's Attorney's Office for the Judicial District of Hartford, the judicial district within which the offenses allegedly occurred, the prosecution of the criminal charge (s) was handled by assistant state's attorneys from the Judicial District of Ansonia-Milford.
On September 29, 2000, after a jury was selected, apparently pursuant to some agreement with the prosecution, plaintiff applied for and was granted accelerated rehabilitation. On the same day, or shortly before that day, he resigned from his position with the State's Attorney's Office. He was placed on probation for six months; the expiration date thereof being March 30, 2001. Apparently, plaintiff successfully completed the probation. Accordingly, the criminal case was dismissed. C.G.S. § 54-56e.
In June 2001, plaintiff was informed that a reviewing committee of the Statewide Grievance Committee found "there is sufficient probable cause to hold a hearing to determine whether the respondent is guilty of misconduct."
 "The Committee concluded that there exists probable cause that the Respondent [Anthony Troy Martin] sexually assaulted a woman who was involved in a criminal case in Hartford Superior Court where the respondent was employed as a prosecutor in violation of Rules 8.4(2) and 8.4(4) of the Rules of Professional Conduct." Letter dated 6/22/2001 from Statewide Grievance Committee to Htfd Jd GA 13 14 Panel and Anthony Troy Martin.
A hearing committee of the statewide grievance committee scheduled a hearing for March 14, 2002. In preparation for that hearing, grievance counsel issued a subpoena directed to John Cronan, the executive assistant state's attorney, in the chief state's attorney's office. The subpoena directed Mr. Cronan to appear before the reviewing committee of the statewide grievance committee on March 14, 2002. It also directed him to produce "any and all documents, records, reports, agreements, letters, etc. relative to your department's investigation of the circumstances surrounding the arrest of Anthony T. Martin and/or his employment with the State of Connecticut including the names of all individuals interviewed and including copies of all statements obtained from said individuals." Subpoena Duces Tecum, February 13, 2002. Exhibit 1.
At the March 14, 2002 grievance committee hearing, plaintiff (Martin) CT Page 8089 objected to the production of the subpoenaed documents claiming they had either been erased or were otherwise not subject to disclosure under state law. The hearing committee claimed it lacked the power to quash the subpoena. According to plaintiff, the hearing committee "invited Plaintiff to petition the Superior Court for an order quashing the subpoena." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 1.
This action followed.
In the prayer for relief in his complaint, plaintiff seeks:
WHEREFORE, the Plaintiff claims:
 1. A temporary and permanent injunction or an order quashing the subpoena duces tecum directed to the Chief state's Attorney's Office;
 2. A temporary and permanent injunction or order quashing the subpoena directed to the Chief State's Attorney's Office regarding those documents subject to erasure or nondisclosure by virtue of State law;
3. Such other further relief as this Court deems proper.
Verified Complaint, March 19, 2002, p. 3.
In his application for a temporary injunction, plaintiff seeks:
WHEREFORE, the plaintiff moves for the following Orders:
 1. A temporary injunction without bond, enjoining the Defendant from considering documents produced in accordance with the subpoena duces tecum issued to the Chief State's Attorney's Office;
 2. A permanent injunction enjoining the Defendant from considering documents produced in accordance with the subpoena duces tecum issued to the Chief Attorney's Office;
3. Such other further relief as this Court deems proper.
Application for Temporary Injunction, March 19, 2002, p. 3.
The court heard the parties on plaintiff's application for a temporary injunction on April 29, 2002. CT Page 8090
At the April 29, 2002 hearing, it developed that the Chief State's Attorney wrote to plaintiff on January 10, 2000 as follows:
 "This letter will serve as notice that this office will now proceed with the administrative investigation into the allegation that you engaged in off-duty misconduct on or about April 1, 1999. The factual allegations that will be investigated are substantially the same as those underlying your arrest on that date. However, the administrative investigation is entirely separate from the pending criminal case and will focus on whether there is any basis for taking action with respect to your employment.
 "I have decided to assign responsibility for this investigation to Marianne Lentini, rather than to an Inspector employed by the Division of Criminal Justice. Ms. Lentini will independently review all the relevant evidence in this matter. She will seek to interview you, the alleged victim, and any other witnesses. We urge you to cooperate with her.
 "When Ms. Lentini's report is completed, I will review it and make a decision at that time whether to consider taking any action with respect to your employment with the Division. You will be provided with a copy of the report at the time of any such decision.
 "If you have any questions, you or your counsel may contact Attorney Saranne Murray, counsel to the Division of Criminal Justice, at (860) 251-5702." Letter; dated January 10, 2000 from John M. Bailey, Chief State's Attorney, to Mr. Anthony Martin. Exhibit 2.
Lentini submitted a report to the Chief State's Attorney's office on or before January 20, 2000.
Plaintiff's primary contention is that the Lentini report is "erased" and therefore cannot be used in the grievance committee proceeding. Connecticut General Statute § 54-142a (a) provides:
"Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the CT Page 8091 time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect. C.G.S. § 54-142a (a).
Plaintiff states:
 "The issue for the court to decide is whether the report prepared for the Chief State's Attorney's Office is subject to the fore going statute [C.G.S. § 54-142a]. The Plaintiff relies on the plain language of the statute — any records in the possession of any state's attorney pertaining to such charge shall be erased. . . ." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 3.
It was plaintiff's burden to show that the Lentini report came within the "erasure" statute. The court does not have the Lentini report.
The Lentini report does not come within "records of any state's attorney pertaining to such charge."[1] The context of the statute shows the records to be erased are the records of the police, the court, and the state's attorney pertaining to the criminal charge (s). The Lentini report was authorized and prepared for the purpose of determining whether disciplinary action should be taken against plaintiff by his employer. It does not appear the Lentini report pertained to the criminal charge (s) even though the same conduct by plaintiff was the root of the criminal charge (s) and the investigation to determine if disciplinary action was warranted.
There is indication in the record that the Lentini report contains an account of her (Lentini's) contact with the alleged victim and one other person. If this be true, what the victim or any other person said to Lentini would not be subject to erasure. Boyles v. Preston,68 Conn. App. 596, 608-610 (March 12, 2002).
It was plaintiff's burden to establish the Lentini report pertained to the criminal charge (s). Just because that report probably had to do with the same conduct of plaintiff as was the subject of the criminal proceeding does not establish it "pertained to the criminal charge(s)."[2]
Information about plaintiff's conduct, which was the basis of the CT Page 8092 criminal prosecution, also may have been contained in the Lentini report. Nevertheless, that inclusion does not make that information subject to erasure. Accordingly, the court holds the Lentini report is not subject to erasure.
Alternatively, plaintiff claims The Freedom of Information Act bars the disclosure and use of the Lentini report in the grievance proceedings. That Act provides in part:
 (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void." [Emphasis added.] C.G.S. § 1-210 (a).
Another part of the Act provides:
 "Nothing in the Freedom of Information Act shall be construed to require disclosure of:
(1) * * *
 (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of privacy;
(3) * * *
 * * * C.G.S. § 1-210 (b)
Plaintiff relies on the exception contained in C.G.S. § 1-210 (b) for "personnel or medical files, the disclosure of which would constitute an invasion of privacy." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 4. According to plaintiff, Chief State's Attorney Bailey's January 10, 2002 letter to plaintiff stated the planned investigation "will focus on whether there is any basis for taking action with respect to your employment." Based on that statement in particular, plaintiff argues that "the report produced by the outside investigator (Lentini) is a personnel file or a file CT Page 8093 "similar' to a personnel file." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 4-5. Grievance counsel argues that the Lentini report is not a part of plaintiff's personnel or similar file.
The Lentini report is in the immediate possession of Mr. Cronan. It is in his office in a file. He asserts it is not in plaintiff's personnel file, but is in a separate file folder, which is in the same file drawer as plaintiff's personnel file.
The Freedom of Information Act does not define the term, "personnel file." The Supreme Court has stated that "a "personnel' file has as one of its principal purposes the furnishing of information for making personnel decisions regarding the individual involved." ConnecticutAlcohol Drug Abuse Commission v. Freedom of Information Commission,233 Conn. 28, 41 1995)
The Supreme Court then elaborated:
 "If a document or file contains material, therefore, that under ordinary circumstances would be pertinent to traditional personnel decisions, it is "similar' to a personnel file. Thus, a file containing information that would, under ordinary circumstances, be used in deciding whether an individual should, for example, be promoted, demoted, given a raise, transferred, reassigned, dismissed or subject to other such traditional personnel actions, should be considered "similar' to a personnel file for the purposes of § 1-19 (b)(2) [now § 1-210 (b)] ." Id.
Clearly, Chief State's Attorney Bailey January 10, 2000 letter stating "the administrative investigation will focus on whether there is any basis for taking action with respect to your employment," demonstrates the Lentini report is a "personnel file" or a file "similar" to a "personnel file."
Defendant's claim that the Lentini report was not in plaintiff's personnel file in Mr. Cronan's office is of no moment. The physical placement of the report is hardly dispositive. Almeida v. Freedom ofInformation Commission, 39 Conn. App. 154, 160 (1995). The court holds the Lentini report is a "personnel file" or one similar to a "personnel file."
Plaintiff argues disclosure of the Lentini report "would constitute an invasion of personal privacy." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 5. CT Page 8094
 "This report presumably contains the complainant's version of what plaintiff did to her during a sexual encounter. Such a subject matter is obviously of a very personal nature. Since the charges arising out of that incident have been dismissed, and all records erased, the disclosure of the incident would constitute an invasion of Plaintiff's personal privacy. We would note that the Plaintiff was arrested without a warrant, and consequently. no arrest warrant affidavit was filed with the Clerk's Office. Furthermore, since the Plaintiff posted bail before his first court appearance, no finding of probable cause was made by a judge of the Superior Court. Thus, the details of the alleged sexual encounter have never been publicly disclosed. Therefore, the disclosure of this record would constitute an invasion of personal privacy, and as such, it is not subject to disclosure pursuant to Conn. Gen. Section 1-210 (b)(2)." [Emphasis in original.] Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 5.
The Supreme Court has addressed the meaning of the phrase, "an invasion of personal privacy" in the context of C.G.S. § 1-210 (b) The meaning of the "invasion of personal privacy" exception in § 1-210 (b) is to be construed "according to its common law meaning." Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 170 (1993).
The Supreme Court looked to the tort action for the invasion of personal privacy. It relied on Section 652D of the Restatement (Second) of Torts.
 "Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that "(a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public." By its terms, therefore, the tort action provides a private remedy to implement a public policy that closely approximates the public policy embodied in § 1-19 (b)(2) of the FOIA." Perkins v. Freedom of Information Commission, 228 Conn. 158, 172 (1993).
The Supreme Court discussion included the following:
"Therefore, the tort standard would only supply a remedy for, and § 1-19 (b)(2) of the FOIA would only bar disclosure of, information that is highly offensive to the ordinary CT Page 8095 reasonable person. The legislature has, furthermore, determined that disclosures relating to the employees of public agencies are presumptively legitimate matters of the public concern.
 * * * "Informed by the tort standard, the invasion of personal privacy exception of § 1-19 (b)(2) precludes disclosure, therefore, only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person. " Perkins v. Freedom of Information Commission, 228 Conn. 158, 174-175 (1993).
Those matters which are of legitimate concern to the public do not come within the "invasion of personal privacy" exception of § 1-210 (b) (2). Id., 172.
The matter within the files of the Chief State's Attorney's Office, plaintiff's employer, had to do with the propriety of an employee's (plaintiff's) conduct and whether that conduct derogated his position as a criminal prosecutor. The claimed improper conduct, in plaintiff's words, was a "sexual encounter." While not explicit in the record, there is more than a suggestion the "sexual encounter" was with a defendant or witness in a case in which plaintiff had prosecutorial responsibility. Any "sexual encounter' between the prosecutor and a defendant or witness in case pending in the criminal court presents a matter of legitimate public concern. If plaintiff had such a "sexual encounter," whether the other party was a willing participant or not, it surely is a matter of "legitimate public concern. "
The Lentini report, according to plaintiff, "presumably contains the complainant's versions of what plaintiff did to her during a sexual encounter." Plaintiff's Memorandum of Law in Support of His Motion to Quash Subpoena, May 7, 2002, p. 5. The Lentini report involves a matter of legitimate public concern. The personnel or similar file exception in § 1-210 (b)(2) is not applicable. It follows that the exception, relied upon by plaintiff, and afforded by § 1-210 (b)(2) is of no avail to plaintiff.
The foregoing discussion aside, plaintiff's basic premise in arguing the Freedom of Information Act [FOIA] prohibits disclosure of the Lentini report and his personnel or similar file is totally erroneous. The FOIA provides that "all records maintained or kept on file by any public agency . . . shall be public records . . . and every person shall have the CT Page 8096 right to inspect such records or to receive a copy of such records . . ." C.G.S. § 1-210 (a). The FOIA also states "[n]othing in the Freedom of Information Act shall be construed to require disclosure of" certain types of records for which disclosure is not required are "[p]ersonnel . . . files and similar files the disclosure of which would constitute and invasion of personnel privacy." § 1-210 (b)(2). Nothing in these provisions prohibits the disclosure of any records, even those which an agency is not required to disclose.[3]
In Chance v. Commissioner of Correction, 47 Conn. App. 539 (1998), certification denied, 244 Conn. 908 (1998), a claim nearly identical to plaintiff's claim was made and rejected. Chance was a habeas corpus action where the petitioner claimed the attorney who represented him in his criminal case was ineffective. Specifically, petitioner claimed that his counsel failed to object on proper grounds to the admission of certain prison disciplinary reports which were admitted to challenge his truthfulness. "The petitioner claims that an objection should have been offered on the ground that the prison reports were privileged and confidential and shielded from disclosure by General Statutes § 1-19
(b)(2) [now § 1-210 (b)(2)] ." [Footnote omitted.] Id. 541.
Addressing the merits of petitioner's contention that "the prison reports were privileged and confidential and shielded from disclosure by General Statutes § 1-19 (b)(2)" the court held:
 "General Statutes § 1-19 (b)(2) provides that certain sections of the Freedom of Information Act are not to be construed to require disclosure of certain personnel files. It does not, however, forbid disclosure of those files. The Petitioner has cited no authority for his claim that prison records are confidential and prohibited from disclosure by § 1-19
(b)(2) ." (Emphasis added.) Chance v. Commissioner of Correction, 47 Conn. App. 539, 541 (1998); certification denied, 244 Conn. 908 (1988).
Like petitioner Chance, plaintiff has cited no authority for his claim that the Lentini report is prohibited from disclosure by C.G.S. § 1-210
(b)(2). There is none.
The court holds that the Freedom of Information Act has no application in this case. The Freedom of Information Act does not prohibit or restrain the use of the Lentini report in the grievance proceedings.
In the "Conclusion" of his brief, plaintiff states:
CT Page 8097 ". . . the Plaintiff would alert the Court to the provisions of Conn. Gen. Stat. § 54-86e that prohibits the disclosure of the identity of alleged victims of sexual assaults." Plaintiff's Memorandum of Law In Support of His Motion to Quash Subpoena, May 7, 2002, p. 6.
That statute states:
 "The name and address of the victim of a sexual assault under section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a, or injury or risk of injury, or impairing of morals under section 53-21, or of an attempt thereof shall be confidential and shall be disclosed only upon order of the Superior Court, except that such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses." C.G.S. § 54-86e.
Plaintiff provided no analysis. Perhaps none is necessary; the words of the statute are straightforward. The court does not know if any one or more of the statutes listed in ¶ 54-86e, i.e., §§ 53a-70 (sexual assault in the first degree), 53a-70a (aggravated sexual assault in the first degree), 53a-71 (sexual assault in the second degree), 53a-72a
(sexual assault in the third degree), 53a-72b (sexual assault in the third degree with a firearm), 53a-73a (sexual assault in the fourth degree), or 53-21 (injury or risk of injury to, or impairing the morals of a child) are applicable. It is questionable whether plaintiff has standing to raise this issue. He certainly is not a person the statute, § 54-86e, is meant to protect.
Plaintiff applied for and was granted accelerated rehabilitation on the charge of assault in the third degree in violation of C.G.S. § 53a-61. See Transcript of Proceedings in State of Connecticut v. Anthony TroyMartin, September 29, 2000, p. 3[4] The matter before the grievance hearing committee is based on a reviewing committee's conclusion "that there exists probable cause that the Respondent [Anthony Troy Martin] sexually assaulted a woman." Letter dated 6/22/2001 from Statewide Grievance Committee to Htfd Jd GA 13 14 Panel and Anthony Troy Martin. The only other mention of a "sexual assault" the court recalls is in the "Conclusion" portion of plaintiff's brief which is quoted above. See p. 17, above. There is nothing in the limited record now before the court which establishes a sexual assault occurred. A sexual assault has not been established; the court cannot conclude there is a sexual assault victim. Section 54-86e is not applicable on the record before the court.
Plaintiff has not presented anything which would militate against an CT Page 8098 order of disclosure as specifically provided in the § 54-86e. The court orders that the supposed victim's name and address may be disclosed to grievance counsel and the grievance committee.
Plaintiff's request for injunctive relief is denied.
 ____________________ Parker, J.