## PAUL ALMEIDA *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (13794)

Dupont, C. J., and Landau and Hennessy, Js.

Argued May 31—decision released September 5, 1995

*Ronald Cordilico*, for the appellant (plaintiff).

*Catherine Wassel-Nasto*, commission counsel, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

DUPONT, C. J. The plaintiff appeals from the judgment of the trial court dismissing his administrative appeal from an order of the freedom of information commission (commission). The commission had ordered the superintendent of the Killingly public schools to release a redacted version of an investigative file regarding an altercation between the plaintiff, a guidance counselor at Killingly Intermediate School, and a student. The plaintiff claims that the trial court improperly upheld the finding of the commission that the file was not exempt from disclosure under General Statutes § 1-19 (b) (2). We reverse the trial court's judgment in part and remand the case to that court for further proceedings.

The superintendent and the principal at the intermediate school ordered an investigation of the incident, which resulted in an exoneration of the plaintiff. Barbara Anne

Marley, the mother of the student involved in the incident, asked that the school provide her with a copy of its records of the investigation, but the school refused. Marley is a party to this appeal and adopted the brief of the commission.

Marley filed a complaint with the commission, alleging that the school's refusal to disclose the requested materials violated the Freedom of Information Act (act), General Statutes § 1-7 et seq. A hearing was held before a hearing officer for the commission, who examined the records in camera, and prepared proposed findings and a decision, which later was adopted by the commission as a final decision. At the hearing, the plaintiff requested and was granted party status.

The commission concluded that the records were public records and that the nature of the records indicated that they were internal investigation records and not personnel, medical or similar files that are exempt from disclosure under the act. The commission further found that even if the records at issue could be considered personnel or similar files, the disclosure of such records would not constitute an invasion of personal privacy because there was nothing potentially embarrassing in the records and because the incident occurred in a public forum. The commission ordered the superintendent to give Marley a copy of the requested records with the names of all minor students redacted.

The plaintiff appealed the commission's order to the trial court, which reviewed the transcript of the administrative hearing and inspected the records in camera. The court found that there was ample and substantial evidence in the record to support the factual findings made by the commission relating to the nature of the records and that the commission reasonably concluded that the records were not exempt under the act. The trial court never reached the issue of whether the release

of the records would constitute an invasion of privacy because it affirmed the commission's decision on the ground that the files were not personnel or similar files.

We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164, 635 A.2d 783 (1993). "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of [the Supreme Court and] this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Citations omitted; internal quotation marks omitted.) Id., 164–65.

The act states that all records kept on file by a public agency are public records, available for public inspection. General Statutes § 1-19 (a).[1] There are, however, certain exceptions to this requirement that are narrowly construed in order to effectuate the act's policy of disclo-

---

[1] General Statutes § 1-19 (a) provides in pertinent part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . ."

sure. *Kureczka* v. *Freedom of Information Commission*, 228 Conn. 271, 277, 636 A.2d 777 (1994). One such exception is for personnel or similar files, the disclosure of which would constitute an invasion of personal privacy. General Statutes § 1-19 (b) (2).[2]

"When the claim for exemption involves § 1-19 (b) (2), [t]he plaintiffs must meet a twofold burden of proof . . . . First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel . . . or 'similar' files. Second, they must show that disclosure of the records would constitute an invasion of personal privacy." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 168. "Determination as to whether either prong has been satisfied is, in the first instance, a question of fact for the [commission], to be determined pursuant to the appropriate legal standards." *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 38, 657 A.2d 630 (1995).

The plaintiff, in this matter, challenges the commission's conclusions concerning both prongs of the § 1-19 (b) (2) burden of proof. First, the plaintiff claims that the commission should have characterized the investigatory file as a "personnel or similar" file. We agree.

"We interpret the term 'similar files' to encompass only files similar in nature to personnel or medical files." (Internal quotation marks omitted.) *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 627–28, 609 A.2d 998 (1992). A determination of whether a file is similar in nature to a personnel file

---

[2] General Statutes § 1-19 (b) provides in pertinent part: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

"requires a functional review of the documents at issue. Just as a 'medical' file of an individual has as one of its principal purposes the furnishing of information for making medical decisions regarding that individual, a 'personnel' file has as one of its principal purposes the furnishing of information for making personnel decisions regarding the individual involved. If a document or file contains material, therefore, that under ordinary circumstances would be pertinent to traditional personnel decisions, it is 'similar' to a personnel file. Thus, a file containing information that would, under ordinary circumstances, be used in deciding whether an individual should, for example, be promoted, demoted, given a raise, transferred, reassigned, dismissed or subject to other such traditional personnel actions, should be considered 'similar' to a personnel file for the purposes of § 1-19 (b) (2)." *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 41.

"While reports of incidents occurring in the workplace are not 'personnel files' per se, they may be similar to personnel files in that they may contain information that would ordinarily be considered in making personnel decisions regarding the individuals involved. Such reports would be functionally similar to information contained in the individual's personnel files. Section 1-19 (b) (2) requires a case-by-case analysis to determine whether a particular file is a 'similar file.' " Id., 42.

The commission found that the records at issue, which were kept in a locked location separate from any personnel file, contained the following: "[D]escriptions of the incident which took place in an open classroom; a list of exhibits, including a classroom description, pertinent public acts, school policy and faculty handbooks; the names of individuals providing statements; names, ages and grades of student witnesses interviewed; the name of the teacher's union representative, a description of the fact-finding efforts and a statement of the case status;

statements of Mr. Almeida, the complainant's son, and two other teachers; and an overhead chart of the classroom and desk arrangement." The commission also found that the investigatory file was not a "similar file," and the trial court, after an in camera review of the records, gave deference to the reasoning of the commission that the records were not personnel or similar files because of the nature of the content of the records and the manner in which the school maintained them.

When the commission and the trial court rendered their decisions, however, they did not have the benefit of the Supreme Court's full explanation, in *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 28, of the scope of what constitutes a "similar" file within the meaning of § 1-19 (b) (2). We conclude, after our review of the record and in light of the explanation provided in *Connecticut Alcohol & Drug Abuse Commission*, that the investigatory file at issue here fits squarely within the definition of a "similar" file and, thus, could only reasonably be found to be a "similar" file within the meaning of § 1-19 (b) (2).

The documents in the file contain information relevant to ascertaining whether the plaintiff assaulted a student and were reviewed to determine whether the plaintiff was to be exonerated or whether he was to be subject to disciplinary action, or perhaps even discharged, as a result of the incident. The cumulative effect of these documents, therefore, had a direct bearing on the employment status of the plaintiff. In this way, the file is "similar" to a personnel file.

There is no foundation for a finding that the investigatory file is not a "similar" file. The fact that the file was stored in a different cabinet from the plaintiff's actual personnel file is not evidence that the file does not fall within the § 1-19 (b) (2) exemption. The definition of a

"similar" file requires that the file be distinguishable from a "personnel" file per se. See *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 41–42. Therefore, the only reasonable conclusion that the commission could reach concerning the investigatory file at issue here is that it is "similar" in nature to a personnel file.

Having found that the investigatory file satisfies the first prong of § 1-19 (b) (2), we must next address the plaintiff's second claim, that the commission made its findings before our Supreme Court's decisions in *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 158, and *Kureczka* v. *Freedom of Information Commission*, supra, 228 Conn. 271, and therefore, used the standard that had previously been articulated in *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 585 A.2d 96 (1991),[3] to find that the release of the documents would not constitute an invasion of privacy. The plaintiff argues that the trial court, which heard this matter after the *Perkins* case was decided, should have remanded it to the commission for a determination of whether the release of the file would constitute an invasion of privacy under the *Perkins* standard.

The commission determined that release of the file would not be an invasion of privacy because there was nothing potentially embarrassing in the records and because the incident occurred in a public classroom. The trial court, however, did not reach the question of whether the release of the file would constitute an invasion of privacy because it found that the file was not a personnel or similar file. We do not decide what the trial court would have done if it had addressed the issue, but

---

[3] In *Chairman* v. *Freedom of Information Commission*, supra, 217 Conn. 198, the Supreme Court stated that "a person's reasonable expectation of privacy and the potential for embarrassment [are] significant factors in determining if disclosure would constitute an invasion of privacy [pursuant to § 1-19 (b) (2) of the act]."

rather, remand the matter for the trial court to make that determination itself.[4] See *Kelly* v. *Freedom of Information Commission*, 221 Conn. 300, 315, 603 A.2d 1131 (1992); *Eagle Hill Corp.* v. *Commission on Hospitals & Health Care*, 2 Conn. App. 68, 79, 477 A.2d 660 (1984).

The judgment is reversed in part and the case is remanded to the trial court for a determination of whether the commission's conclusion that there was not an invasion of privacy should be upheld.

In this opinion the other judges concurred.

---

[4] Although the trial court has the option to remand the question to the commission, for another determination of whether, given the standard set forth in *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 158, the release would be an invasion of privacy, the trial court may decide that such a remand would be unnecessary. See *Kureczka* v. *Freedom of Information Commission*, supra, 228 Conn. 278–79 n.12.