******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CLERK OF THE COMMON COUNCIL *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 44284)

SEBASTIAN GIULIANO ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 44295)

Moll, Alexander and Suarez, Js.

*Syllabus*

In each of two cases, the defendant Freedom of Information Commission
appealed from the judgment of the trial court sustaining an appeal from
the commission's decision ordering the disclosure of unredacted records
after rejecting the claims of the city of Middletown that the requested
information was protected. A city employee alleged that the city's mayor
had harassed her and a union representing city employees alleged that
the mayor had improperly solicited campaign contributions from its
members. In response to these complaints, the city's legislative body,
the common council, hired a law firm to conduct an investigation. In
the first case, the defendant D, a former member of the common council,
sent a request to the plaintiff, the clerk of the common council, for,
inter alia, invoices submitted to the city by the law firm in connection
with its investigation. In response, the clerk sent D the requested records
after redacting the names of city employees and the dates on which
meetings occurred between those employees and the law firm's attor-
neys. Thereafter, D filed a complaint with the commission challenging
the redactions with respect only to the name of the clerk and the dates
of the meetings. Following a hearing, the commission ordered that the
requested records be produced without the contested redactions. The
clerk appealed to the trial court, which sustained her objection,
determining that the redacted information was exempt from disclosure
pursuant to the applicable statute (§ 1-210 (b) (2) and (10)), and the
commission appealed to this court.
In the second case, the defendant mayor filed a complaint with the commis-
sion after the clerk produced redacted records in response to his request
for, inter alia, communications between the law firm and the city. The
commission ordered the disclosure of certain records but permitted the
redaction of the names of then current city employees and their job
titles. Thereafter, the plaintiffs, two members of the common council
and the clerk, appealed to the trial court. The trial court sustained the
appeal of the common council members, determining that the records
at issue were exempt from disclosure pursuant to § 1-210 (b) (10)
because they were protected by the attorney-client privilege, and it
dismissed the clerk's appeal. The commission appealed to this court,
and, thereafter, the two appeals were consolidated. On the commission's
appeals to this court, *held*:
1. With respect to the commission's appeal in the first case, AC 44284, the
trial court did not err in concluding that the records at issue were similar
in nature to personnel files and constituted similar files under § 1-210
(b) (2), as the records, invoices with redactions of the names of city
employees and the dates on which meetings occurred between the
employees and attorneys at the law firm, were created as a result of
the law firm's investigation of the complaints brought against the mayor
and could have been used in determining whether the mayor should
have been dismissed or subjected to other personnel actions; moreover,
the information contained in the invoices was exempt from disclosure
pursuant to § 1-210 (b) (2) if such disclosure would constitute an invasion
of personal privacy, and, accordingly, the case was remanded to the
commission for further factual findings relating to whether the disclo-
sure of the redacted information would constitute an invasion of privacy,
as the commission previously did not reach the issue because it errone-
ously had determined that the records were not personnel or similar

files; furthermore, the trial court erred in concluding that the name of the clerk and the dates of the interviews of city employees by the law firm's attorneys were exempt from disclosure as privileged attorney-client communications under § 1-210 (b) (10), as the four part test set forth in *Shew* v. *Freedom of Information Commission* (245 Conn. 149) for determining whether communications were protected by the attorney-client privilege was not met, the mere fact that a meeting had taken place between the clerk and the attorneys did not constitute a privileged communication, disclosure of the name of the clerk would not reveal the substance of the communication or the specific nature of the services provided, and the dates of interviews did not relate to legal advice or reveal the specific nature of the services provided.

2. With respect to the commission's appeal in the second case, AC 44295, the case was remanded to the commission for further factual findings because the commission had failed to make determinations concerning two of the *Shew* test factors, namely, whether, pursuant to § 1-210 (b) (10), communications were made between city employees and the law firm's attorneys and, if so, whether any such communications were made in confidence.

Argued November 9, 2021—officially released September 27, 2022

*Procedural History*

Appeal, in the first case, from the decision of the named defendant ordering the disclosure of certain unredacted billing records, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment sustaining the plaintiff's appeal, from which the named defendant appealed to this court; appeal, in the second case, from the decision of the named defendant ordering the disclosure of certain unredacted email records, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal of the plaintiff Linda Reed and sustaining the appeal of the named plaintiff et al., from which the named defendant appealed to this court; thereafter, this court granted the named defendant's motion to consolidate the appeals. *Reversed in part*; *further proceedings in Docket No. AC 44284*; *reversed*; *further proceedings in Docket No. AC 44295*.

*Danielle L. McGee*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellant (named defendant in both appeals).

*Michael C. Harrington*, for the appellees (plaintiff in Docket No. AC 44284 and named plaintiff et al. in Docket No. AC 44295).

*Opinion*

ALEXANDER, J. These consolidated appeals arise out of an investigation by the city of Middletown (city) into alleged improprieties by the former mayor and the city's subsequent refusal to provide unredacted records related to that investigation on the ground that the records were not subject to disclosure under the Freedom of Information Act (act), General Statutes § 1-200 et seq. The defendant Freedom of Information Commission (commission)[1] appeals from the judgments of the Superior Court in Docket No. AC 44284, sustaining the appeal of the plaintiff, the Clerk of the Common Council for the city (clerk of the common council), and in Docket No. AC 44295, sustaining the appeal of the plaintiffs Sebastian Giuliano and Mary Bartolotta[2] from the commission's decisions ordering disclosure of unredacted billing and email records, respectively, after rejecting the city's claims that the information at issue was either protected personnel or similar files or subject to the attorney-client privilege. In AC 44284, the commission claims that the court erred in (1) concluding that the attorney billing records were personnel or similar files pursuant to General Statutes § 1-210 (b) (2); (2) making a factual finding that the disclosure of the redacted information would constitute an invasion of personal privacy and was thus prohibited under § 1-210 (b) (2); and (3) concluding that certain information in attorney billing records was exempt from disclosure as privileged attorney-client communications pursuant to § 1-210 (b) (10). In AC 44295, the commission claims that the court erred in concluding that certain email communications also were privileged attorney-client communications protected under § 1-210 (b) (10). We agree with the commission except with respect to the issue of whether the invoices constitute personnel or similar files. Therefore, in AC 44284, we affirm in part and reverse in part the judgment of the court. In AC 44295, we reverse the judgment of the court.

## I

## AC 44284

We first address the appeal brought under Docket No. AC 44284. The following facts and procedural history are relevant to our resolution of this appeal. In December, 2017, a city employee complained that the mayor, Daniel Drew, unlawfully had harassed her. Additionally, a union representing city employees sent a letter to the city alleging that the mayor improperly had been soliciting campaign contributions from city employees. In response, the common council, which is the city's legislative body, hired an outside law firm, LeClairRyan, to conduct an investigation into the complaints. Attorney Margaret Mason of LeClairRyan served as lead counsel on the investigation. The common council also created a special investigative sub-

committee, which was comprised of three of the common council's twelve members: Bartolotta, Giuliano, and Thomas Serra.

On September 7, 2018, Gerald Daley, a former member of the common council, sent a records request to the clerk of the common council, who was the records custodian for the common council, in which he stated in relevant part: "I am requesting an opportunity to inspect or obtain copies of public records comprising the complete billing statements and invoices, including all non-privileged supporting documentation, submitted by LeClairRyan . . . between January 25, 2018 and August 13, 2018." Pursuant to General Statutes § 1-214 (b) (1),[3] the city gave notice to all employees whose names appeared in the responsive documents and a number of employees objected in writing to the disclosure of their identities. In response, the clerk of the common council sent Daley the requested records with redactions of the names of city employees and the clerk of the common council, as well as redactions of the dates on which meetings occurred between the employees and attorneys at LeClairRyan.

Thereafter, Daley filed a complaint with the commission and a contested case hearing was held on January 3, 2019. At the hearing, Daley indicated that he was challenging only the redactions of the clerk of the common council's name and the dates of the meetings between city employees and LeClairRyan attorneys. He did not challenge the redactions of the names of other city employees. The common council asserted that the redacted portions of the records were exempt from public disclosure pursuant to § 1-210 (b) (2)[4] or (10).[5] At the conclusion of the hearing, the hearing officer ordered the common council to submit to the commission all of the records at issue for an in camera review.

On September 17, 2019, the commission issued its final decision in which it ordered that the requested records be produced without redactions of the clerk of the common council's name and the dates and locations of interviews. The commission determined that the requested records are public records within the meaning of General Statutes §§ 1-200 (5), 1-210 (a) and 1-212 (a). It concluded that the attorney billing records did not constitute " 'personnel' or 'similar' files within the meaning of § 1-210 (b) (2)." It further concluded that none of the redactions were " 'oral or written communications' within the meaning of [General Statutes § 52-146r (2)].[6] . . . [T]he redacted information does not reveal the motive of the common council in seeking representation, litigation strategy or the specific nature of the services provided. . . . Accordingly, it is concluded that the date and place of the legal meetings and the name of the clerk of the common council (to the extent such name is contained in the in camera records) are not exempt from disclosure pursuant to

§ 1-210 (b) (10)." (Footnote added.)

Thereafter, the clerk of the common council appealed to the Superior Court. On September 3, 2020, after a hearing, the court issued a memorandum of decision sustaining the appeal and rendering judgment for the clerk of the common council. In its decision, the court concluded that the redacted information was exempt from disclosure pursuant to both § 1-210 (b) (2) and (10).

First, the court determined that the redaction of the clerk of the common council's name was exempt from disclosure pursuant to § 1-210 (b) (2) because the records were personnel or similar files and redaction was necessary to prevent the invasion of the personal privacy of the clerk of the common council. It explained that the "invoices were produced solely in connection with a personnel investigation. . . . The results of the investigation and any actions taken therefrom are clearly personnel actions. The investigation, its results, and any consequent actions were meant to impact the mayor, the city employees who complained, and city employees generally. The documents contain information that is pertinent to personnel decisions."

The court reasoned that the clerk of the common council "participated in the investigation to facilitate the investigation on behalf of the common council, and also potentially as a witness, whistleblower and/or complainant. Our Supreme Court has recognized the concern associated with disclosing the identifying information of individuals who report harassment or who participate in an investigation concerning allegations of harassment in the workplace. . . . [R]evealing the identity of such complainants or participants in a harassment investigation in this context could facilitate retaliation and could inhibit people from participating in such investigations. In this case, that concern is heightened because Daley has consented to the redaction of the names of all current city employees except solely for that of the clerk of the common council. This focus on a particular city employee gives an even higher degree of concern." (Citations omitted.) The court found that the information sought from the records did not relate to legitimate matters of public concern and that disclosure would be highly offensive to a reasonable person because it would facilitate retaliation and would inhibit future participation in such investigations.[7]

The court further concluded that the redacted information in the invoices relating to the names of city employees interviewed by attorneys from LeClairRyan, as well as the time spent on each interview and the date and place of each interview, were protected by the attorney-client privilege. It explained that, although "attorney invoices may not necessarily be entirely privileged, the information contained in the invoices must

be analyzed in the same way any communication between the attorney and the client is analyzed for privilege. . . . [T]he applicability of the attorney-client privilege to the information in question is apparent from the documents themselves, the context of the harassment allegations, and the attorney's assignment to conduct a workplace harassment investigation." This appeal followed.

We begin by setting forth our standard of review and the legal principles that guide our analysis. "The scope of our review of the merits of the plaintiffs' argument is governed by a provision of the [act], General Statutes § 1-206 (d), and complementary rules of the Uniform Administrative Procedure Act . . . General Statutes § 4-166 et seq. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Where, as in this case, the application of the statute to the documents at issue is fact bound, the abuse of discretion standard governs the appeal. . . .

"By way of background, we discuss briefly the policy of the act. [T]he overarching legislative policy of [the act] is one that favors the open conduct of government and free public access to government records.[8] . . . [I]t is well established that the general rule under the [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the [act]. . . . [Thus] [t]he burden of proving the applicability of an exception [to disclosure under the act] rests upon the party claiming it." (Citations omitted; footnote added; internal quotation marks omitted.) *Lindquist* v. *Freedom of Information Commission*, 203 Conn. App. 512, 525–26, 248 A.3d 711 (2021).

### A

We first address the commission's claim that the court erred in concluding that the invoices at issue are personnel or similar files. We disagree.

Section 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) [p]ersonnel or medical

files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ." "When [a] claim for exemption involves [§ 1-210 (b) (2)],[9] the plaintiffs must meet a twofold burden of proof . . . . First, they must establish that the files in question are within the categories of files protected by the exemption, that is, personnel, medical or similar files. Second, they must show that disclosure of the records would constitute an invasion of personal privacy. . . . Determination as to whether either prong has been satisfied is, in the first instance, a question of fact for the [commission], to be determined pursuant to the appropriate legal standards." (Citation omitted; footnote added; internal quotation marks omitted.) *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 38, 657 A.2d 630 (1995).

The terms "personnel" and "similar" files are not defined in the act; however, our courts have interpreted the meaning and scope of such terms. " 'We interpret the term "similar files" to encompass only files similar in nature to personnel or medical files.' " Id., 40. Our Supreme Court has stated that a determination of whether a file is similar to a personnel file "requires a functional review of the documents at issue. . . . [A] 'personnel' file has as one of its principal purposes the furnishing of information for making personnel decisions regarding the individual involved. If a document or file contains material, therefore, that under ordinary circumstances would be pertinent to traditional personnel decisions, it is 'similar' to a personnel file. Thus, a file containing information that would, under ordinary circumstances, be used in deciding whether an individual should, for example, be promoted, demoted, given a raise, transferred, reassigned, dismissed or subject to other such traditional personnel actions, should be considered 'similar' to a personnel file for the purposes of [§ 1-210 (b) (2)]." Id., 41.

In *Connecticut Alcohol & Drug Abuse Commission*, the records at issue pertained to an investigation regarding complaints of sexual harassment filed by police officers against a fellow officer. Id., 30–31. Our Supreme Court concluded that the investigation file was a " 'similar' " file and explained that, although "reports of incidents occurring in the workplace are not 'personnel files' per se, they may be similar to personnel files in that they may contain information that would ordinarily be considered in making personnel decisions regarding the individuals involved. Such reports would be functionally similar to information contained in the individual's personnel files. [Section 1-210 (b) (2)] requires a case-by-case analysis to determine whether a particular file is a 'similar file.' " Id., 42.

In *Almeida* v. *Freedom of Information Commission*, 39 Conn. App. 154, 155, 158, 664 A.2d 322 (1995), this

court held that an investigative file regarding an altercation between the plaintiff, who was a guidance counselor, and a student was a personnel or similar file. The records at issue "were kept in a locked location separate from any personnel file, [but] contained the following: descriptions of the incident which took place in an open classroom; a list of exhibits, including a classroom description, pertinent public acts, school policy and faculty handbooks; the names of individuals providing statements; names, ages and grades of student witnesses interviewed; the name of the teacher's union representative, a description of the fact-finding efforts and a statement of the case status; statements of . . . the complainant's son, and two other teachers; and an overhead chart of the classroom and desk arrangement." (Internal quotation marks omitted.) Id., 159–60. The court explained that "[t]he documents in the file contain information relevant to ascertaining whether the plaintiff assaulted a student and were reviewed to determine whether the plaintiff was to be exonerated or whether he was to be subject to disciplinary action, or perhaps even discharged, as a result of the incident. The cumulative effect of these documents, therefore, had a direct bearing on the employment status of the plaintiff. In this way, the file is 'similar' to a personnel file." Id., 160.

In *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 628, 609 A.2d 998 (1992), our Supreme Court held that "a permit to carry a pistol or revolver is not 'similar' to a medical or personnel file" and, therefore, the information therein was not exempt from disclosure pursuant to § 1-210 (b) (2). In that case, a request was sent to the plaintiffs, the superintendent of police of the city of Bridgeport and the Bridgeport Police Department, asking for "a list of all those residents of Bridgeport who possessed municipal permits to carry pistols or revolvers." Id., 623. Specifically, the requester "desired to know the individual's name, birthdate, address, telephone number, occupation, sex, date of issuance of the permit and what weapons were registered to the individual." Id., 624. Our Supreme Court, in concluding that the pistol permits were not " 'similar' " files, reasoned that, "[i]n common parlance, a permit to carry a pistol or revolver is not 'similar' to a medical or personnel file. Unlike a personnel or medical file, a permit to carry a pistol or revolver does not contain detailed information with a potential for disclosure of the intimate details of one's personal life or capabilities. To conclude that a permit to carry a pistol or revolver is 'similar' to a medical or personnel file and therefore exempt from disclosure would be a broad interpretation of § [1-210 (b) (2)] that would stretch the ordinary meaning of 'similar' to the breaking point. Such an interpretation would be inconsistent with the general principle that exceptions to disclosure must be narrowly construed." (Footnotes omitted.)

Id., 628.

The question before this court is whether the commission properly determined that the attorney invoices are not personnel or similar files. We conclude, as did the court, that the commission incorrectly determined that the attorney billing records are not personnel or similar files within the meaning of § 1-210 (b) (2). The records at issue are invoices with redactions of the names of city employees and the dates of the meetings that occurred between the employees and the attorneys at LeClairRyan. The invoices were created as a result of an investigation conducted by LeClairRyan after allegations of harassment and improper solicitation of campaign contributions were brought against the mayor. The invoices contained the names of city employees with whom LeClairRyan had spoken in the course of its investigation, as well as the dates on which the interviews took place. The information obtained in the course of the investigation, therefore, could be used to inform any necessary remedial action and in deciding whether the mayor should be "dismissed or subject to other such traditional personnel actions . . . ." *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 41. The invoices, therefore, are " 'similar in nature' " to personnel files and constitute " 'similar' " files as that term is used in § 1-210 (b) (2). Id., 40, 42; see also *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 661–62, 774 A.2d 957 (2001) ("written complaint of sexual harassment made by an employee . . . the complainant's detailed statement to investigating officer, and notes from interviews of many coworkers taken during the course of the department's investigation of that complaint" constituted personnel or similar files). Consequently, the information contained in the invoices, including the name of the clerk of the common council, is exempt from disclosure pursuant to § 1-210 (b) (2) if disclosure of such information would constitute an invasion of personal privacy. See *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 38.

B

The commission next argues that the court erred in making factual findings because the commission did not make any determination as to whether disclosure of the redacted information would constitute an invasion of personal privacy under § 1-210 (b) (2). Specifically, the commission contends that, "[b]ecause the [commission] found that the billing records did not constitute personnel or similar files . . . the [commission] did not reach a finding as to whether disclosure would constitute an invasion of personal privacy. Because the Superior Court concluded that the [commission's] finding was clearly erroneous, the court should have remanded the matter to the [commission]

to consider whether the disclosure would result in an invasion of personal privacy." In light of our conclusion that the court correctly determined that the records are personnel or similar files, we agree with the commission that the case should be remanded to the commission for factual findings in regard to whether disclosure of the redacted information would constitute an invasion of personal privacy. Because the commission determined that the records did not constitute personnel or similar files within the meaning of § 1-210 (b) (2), it did not reach the issue of whether disclosure of the invoices would constitute an invasion of personal privacy. "Such a determination is for the [commission] in the first instance." *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, supra, 233 Conn. 43; see also *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 160–61, 714 A.2d 664 (1998). We are obligated, therefore, to direct the remand of the matter to the commission for a determination as to whether disclosure of the name of the clerk of the common council and the dates contained in the invoices would constitute an invasion of privacy pursuant to § 1-210 (b) (2).

C

Finally, the commission argues that the court erred in concluding that the name of the clerk of the common council and the dates of interviews by counsel with city employees are exempt from disclosure as privileged attorney-client communications.[10] We agree.

Section 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (10) . . . communications privileged by the attorney-client relationship . . . ." "[T]he essential elements of the attorney-client privilege under both statutory and common law are identical." *Lash* v. *Freedom of Information Commission*, 300 Conn. 511, 516, 14 A.3d 998 (2011). We apply a four part test to determine whether communications are privileged: "(1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Footnote omitted; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159. "[T]he party claiming an exemption from the disclosure requirements of the act bears the burden of establishing the applicability of the exemption." *Lash* v. *Freedom of Information Commission*, supra, 517. The privilege must be established "for each document separately considered" and must be "narrowly applied and strictly construed." *Harrington* v. *Freedom of Information Commission*, 323 Conn. 1, 12, 144 A.3d 405 (2016).

"[T]here is a general agreement that attorney billing statements and time records are protected by the attorney-client privilege *only* to the extent that they reveal litigation strategy and/or the nature of services performed . . . . Thus, statements and records that simply reveal the amount of time spent, the amount billed, and the type of fee arrangement between the attorney and the client are fully subject to discovery." (Emphasis in original; internal quotation marks omitted.) *Pryor* v. *Pryor*, Superior Court, judicial district of Fairfield, Docket No. FA-08-4026674-S (January 22, 2010) (49 Conn. L. Rptr. 274, 275); see also *Bernstein* v. *Mafcote, Inc.*, 43 F. Supp. 3d 109, 115 (D. Conn. 2014) (billing records not subject to attorney-client privilege because "they do not reveal the specific nature of the services provided, but rather only reveal the general nature of work performed"). Information contained in invoices, however, that reveals "the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided . . . fall within the privilege." (Emphasis omitted; internal quotation marks omitted.) *Bruno* v. *Bruno*, Superior Court, judicial district of Danbury, Docket No. FA-05-40049006-S (July 10, 2009). Furthermore, a client's identity and information related to where and when a client has conversations with his or her attorney do not fall within the attorney-client privilege. See *Ullmann* v. *State*, 230 Conn. 698, 712, 647 A.2d 324 (1994) ("the mere fact that a meeting took place between [an attorney] and his client did not constitute a communication and such information is not privileged for that reason"); *New Haven* v. *Freedom of Information Commission*, 4 Conn. App. 216, 220, 493 A.2d 283 (1985) (affirming commission's order compelling disclosure of number of billing hours and general subject matter designations on billing invoices and stating that "[q]uestions as to where and when a client had conversations with his attorney have been found not to be within the attorney-client privilege").

On the basis of our thorough review of the record, we cannot conclude, as the trial court did, that the commission acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in concluding that the name of the clerk of the common council, to the extent it appears in the invoices, and the dates of interviews, were not exempt from disclosure. The four part test for identifying communications protected by the attorney-client privilege has not been met.

The clerk of the common council is a city employee and a representative of the client, the common council. Similar to the facts of *Ullmann* v. *State*, supra, 230 Conn. 712, the mere fact that a meeting took place between the LeClairRyan attorneys and the clerk of the common council, a representative of the client, does not constitute a privileged communication. Furthermore, the disclosure of the name of the clerk of the

common council would not reveal " 'the substance of any communication' "; id.; that the clerk of the common council had with the LeClairRyan attorneys and, therefore, would not reveal the specific nature of the services provided.

Similarly, the dates of interviews are not privileged attorney-client communications because they do not relate to legal advice nor do they reveal the specific nature of the services provided. The clerk of the common council failed to present evidence that the disclosure of only the date that an interview took place would reveal the identity of individuals who participated in the investigation. The dates of the interviews, therefore, do not reveal the specific nature of services provided and are not exempt from disclosure pursuant to the attorney-client privilege.

Accordingly, in AC 44284 we affirm the judgment of the court with respect to its determination that the attorney invoices are personnel or similar files. With respect to the court's determination that disclosure of the redacted information would constitute an invasion of personal privacy pursuant to § 1-210 (b) (2), we reverse the judgment of the court with direction to remand the case to the commission for further proceedings to determine whether disclosure of the name of the clerk of the common council and the dates of the interviews would constitute an invasion of personal privacy pursuant to § 1-210 (b) (2). We reverse the judgment of the court with respect to its determination that the name of the clerk of the common council, to the extent it appears in the invoices, and the dates of interviews are exempt from disclosure pursuant to § 1-210 (b) (10).

II

AC 44295

We now turn to the appeal brought under Docket No. AC 44295. The following facts and procedural history are relevant to our resolution of this appeal. On August 7, 2018, Daniel Drew sent a records request to the clerk of the common council requesting, inter alia, "copies of any and all [emails], text messages, calendars, written communications in any form, [unredacted] legal bills, and cellular telephone logs pertaining to this investigation between members of the subcommittee, any employee/associate/partner of [LeClairRyan], and any staff of the city . . . ." In response to his request, Drew received "a large package of records," some of which had been redacted.

Thereafter, Drew filed a complaint with the commission, and a contested case hearing was held on January 3, 2019. At the hearing, Drew indicated that he was not challenging the redactions in the records he had already received but, instead, argued that there were additional responsive records, such as emails, that had not been

disclosed. Drew further contended that the common council lacked the authority to hire an attorney for the purpose of receiving legal advice, and, therefore, none of the requested records should be exempt pursuant to the attorney-client privilege. The common council contended that the records were exempt from disclosure pursuant to § 1-210 (b) (2) or (10). At the conclusion of the hearing, the hearing officer ordered the common council to submit to the commission all of the records at issue for an in camera review.

On September 17, 2019, the commission issued its final decision in which it ordered the common council to disclose certain records identified in paragraph 48 of its final decision but permitted the redaction of the names of any current city employees, as well as their job titles. The commission determined that the requested records are public records within the meaning of §§ 1-200 (5), 1-210 (a), and 1-212 (a). It also determined that the common council and LeClairRyan entered into an attorney-client relationship. With regard to a number of the records at issue, however, the commission determined that no legal advice was being sought by the client or being provided by the attorney, and, therefore, those records were not exempt from disclosure pursuant to the attorney-client privilege.

Thereafter, Giuliano, Bartolotta,[11] and Linda Reed,[12] appealed to the Superior Court. On September 10, 2020, after a hearing, the court issued a memorandum of decision sustaining the appeal and rendering judgment for Giuliano and Bartolotta. In its decision, the court concluded that the records at issue, identified in paragraph 48 of the commission's final decision, were protected by the attorney-client privilege and, therefore, were exempt from disclosure pursuant to § 1-210 (b) (10).

The court identified the four part test used to determine whether information is covered by the attorney-client privilege and determined that three of the four prongs were clearly met. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159. "[T]here is no doubt that the LeClairRyan attorney was acting in her professional capacity as an attorney. The attorney was hired to conduct a workplace harassment investigation and report her findings and recommendations to the common council. The documents in question are clearly communications between the attorney and either the clerk of the common council, who acted as an agent for the common council, or other employees of the city who were participating in the investigation being conducted by the attorney. The communications were made in confidence and were confidential absent some disclosure here. Thus, the only remaining element to be considered is whether the communications were related to legal advice." The court characterized the documents at issue as communications from (1) the

clerk of the common council providing information to the attorney in furtherance of the attorney's investigation, (2) employees of the city seeking to speak with the attorney in connection with the attorney's investigation, each of whom was officially interviewed by the attorney in the conduct of her investigation, (3) the attorney to the clerk of the common council conveying information about the investigation, (4) the attorney to the common council members concerning the investigation, and (5) the attorney to specific city employees concerning interviewing the employees as part of the attorney's investigation.

The court explained that, "[a]lthough some of these documents contain logistical information concerning the investigation, the information in the documents in question: (i) supports the results of the investigation, (ii) reveals the attorney's thinking and strategy concerning the investigation by revealing her choices of information needed, employees to interview, and the time spent with each employee, (iii) potentially suggests to the alleged harasser the results of the investigation by revealing whether the correct employees were interviewed, (iv) gives indications of what information certain employees have relevant to the investigation and the employees' attitudes, and (v) reveals the thoroughness of the investigation and the nature of the services provided. Clearly, the foregoing documents relate to the legal advice to be provided, and the communications made therein were made in furtherance thereof." This appeal followed.

On appeal, the commission contends that the court erred in concluding that certain email communications were exempt from disclosure as attorney-client privileged communications pursuant to § 1-210 (b) (10). It also contends that, because the commission did not make factual findings with respect to each of the factors of the test set forth in *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159, it was improper for the court to make such findings and it should have remanded the case to the commission for consideration of those factors.

We begin with our standard of review and the legal principles relevant to our resolution of this claim. As we stated in part I of this opinion, "[t]he scope of our review of the merits of the [plaintiff's] argument is governed by a provision of the [act] . . . § 1-206 (d), and complementary rules of the Uniform Administrative Procedure Act . . . § 4-166 et seq. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." (Internal quotation marks omitted.) *Lindquist* v. *Freedom of Information Commission*, supra, 203 Conn. App. 525.

As we set forth in part I C of this opinion, we apply a four part test to determine whether communications

are privileged: "(1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Footnote omitted; internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159.

In considering the first prong of the test, the court properly determined that, consistent with the commission's finding, an attorney-client relationship had been established between LeClairRyan and the common council and that the common council's purpose in hiring LeClairRyan was to "investigate the complaints and to provide legal advice." The LeClairRyan attorneys, therefore, were acting in a professional capacity when communicating with city employees.

With respect to the third prong, whether the communications relate to the legal advice sought by the common council, we agree with the court's conclusion that the information contained in the documents at issue were made in furtherance of the investigation and, therefore, related to the legal advice to be provided. "Not every communication between attorney and client falls within the privilege. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." *Ullmann* v. *State*, supra, 230 Conn. 713. "[I]t is not required that the [legal] advice [sought] must pertain to contemplated or pending litigation. . . . Moreover, the communication need not expressly seek legal advice. . . . The privilege merely requires that the client be consulting an attorney for professional advice, and [a]ny type of legal advice will qualify . . . ." (Citations omitted; internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg.*, *Inc.*, 265 Conn. 1, 13, 826 A.2d 1088 (2003). Furthermore, "the privilege extends to the giving of information to the lawyer to enable counsel to give sound and informed [legal] advice." (Internal quotation marks omitted.) Id., 14. The communications at issue did not expressly ask any legal questions; however, the information conveyed in the communications related to the investigation by LeClairRyan into the conduct of and allegations against the mayor and was needed to supply a basis for legal advice concerning any future steps taken by the common council. See id., 13; *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 160.

We agree, however, with the commission's contention that it did not make a determination concerning two of the *Shew* factors, namely, whether the communications were made between employees of the city and the LeClairRyan attorneys and whether the communica-

tions were made in confidence. Consequently, we remand the case for further factual findings by the commission with respect to those questions. See *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 160–61 ("The commission . . . made no findings concerning . . . two requirements, namely, whether the persons interviewed were employees or officials of the town at the time of the interviews, and whether the communications were made in confidence. Consequently, a remand for further factual findings by the commission with regard to these questions is necessary.").

Accordingly, the judgment of the court is reversed with direction to remand the case to the commission for a determination as to whether, pursuant to § 1-210 (b) (10), the communications at issue were made in confidence between employees of the city and the LeClairRyan attorneys.

In Docket No. AC 44284, the judgment is reversed with respect to the determination that the name of the clerk of the common council and the dates of interviews are exempt from disclosure pursuant to § 1-210 (b) (10) and with respect to the determination that disclosure of the redacted information would constitute an invasion of personal privacy pursuant to § 1-210 (b) (2) and the case is remanded with direction to remand the case to the commission for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In Docket No. AC 44295, the judgment is reversed and the case is remanded with direction to remand the case to the commission for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] In each case, the individuals who requested the unredacted records from the city, namely, Gerald Daley in Docket No. AC 44284 and Daniel Drew in Docket No. AC 44295, also were named as defendants.

[2] Linda Reed was also a plaintiff in AC 44284. The trial court dismissed her appeal and she has not appealed from that judgment.

[3] General Statutes § 1-214 (b) (1) provides in relevant part: "Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files, and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (A) each employee concerned . . . and (B) the collective bargaining representative, if any, of each employee concerned."

[4] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

[5] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (10) . . . communications privileged by the attorney-client relationship . . . ."

[6] General Statutes § 52-146r (2) provides: " 'Confidential communications' means all oral and written communications transmitted in confidence between a public official or employee of a public agency acting in the performance of his or her duties or within the scope of his or her employment and a government attorney relating to legal advice sought by the public agency or a public official or employee of such public agency from that

attorney, and all records prepared by the government attorney in furtherance of the rendition of such legal advice . . . .”

[7] See *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 175, 635 A.2d 783 (1993).

[8] General Statutes § 1-210 (a) provides in relevant part: “Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . .”

[9] Section 1-210 previously was codified at General Statutes § 1-19.

[10] We note that, although the commission also contends that the court erred in concluding that time and location information was exempt from disclosure, the information redacted from the invoices consisted only of names and dates.

[11] Giuliano and Bartolotta appealed in their capacity as members of the common council.

[12] In its decision, the court determined that Reed, who was not a member of the common council, did not have standing to pursue an appeal and dismissed her claim. Reed has not appealed from the court’s dismissal of her claim.